551 N.E.2d 881 (1990)
In re M.S., B.G., and C.G., Children in Need of Service.
Michelle Gibson, Natural Mother-Appellant,
v.
Dekalb County Department of Public Welfare, Petitioner-Appellee.
No. 17A03-8904-CV-165.
Court of Appeals of Indiana, Third District.
March 21, 1990.
Rehearing Denied June 5, 1990.
*882 John C. Hamilton, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, for natural mother-appellant.
Kirk D. Carpenter, Mefford & Carpenter, a Professional Corp., Auburn, for petitioner-appellee.
GARRARD, Judge.
Michelle Gibson appeals the judgment of the DeKalb Circuit Court terminating the parent-child relationship between her and her three children. On review she presents several issues, which we restate as follows: Whether the trial court accorded Michelle Gibson her procedural rights in accordance with IC 31-6-5-2(c) when it accepted her signed statement voluntarily relinquishing her parental rights.

Facts and Procedural History
On November 24, 1986 Mitchell and Michelle Gibson agreed that their three sons should be made temporary wards of the DeKalb County Department of Public Welfare. The children were adjudicated children in need of services and placed in foster care, and the Gibsons were offered counseling and other services to overcome their problems. Over the next two years, the arrangement was periodically reviewed, and the Gibsons did not demonstrate an ability to overcome their problems and resume caring for the children. Finally, on September 21, 1988, the Department of Public Welfare filed its petition to terminate the parent-child relationship and hearing was set for October 4, 1988.
On the day of the hearing, the Gibson's attorney met with them in the court's library. He advised them that approximately 20 witnesses could testify against them and that there were some serious allegations. He discussed their options which included signing papers to voluntarily relinquish their parental rights. He presented the Gibsons with "Voluntary Relinquishment of Parental Rights" forms, and the Gibsons signed them. Their attorney notarized their signatures and took them into the courtroom. The court entered its judgment and written findings of fact, wherein it accepted their relinquishment as voluntary and terminated the parent-child relationship.
On December 2, 1988 Michelle, by new counsel, filed her motion to correct errors.[1] The motion was heard on February 24, 1989, at which time the court heard evidence from both Michelle and her former counsel. Both testified that Michelle and Mitchell had not appeared in the courtroom during the termination hearing. Their participation in the proceedings took place in the court library with their attorney entering from time to time and returning to the courtroom. The attorney testified that Michelle was distraught. Only he appeared for them in court.

Discussion and Decision
Michelle contends that she was deprived of her procedural rights because the trial court failed to follow the procedures set out in IC 31-6-5-2. Specifically, because she did not consent in open court, she contends she was entitled to be informed of her constitutional and legal rights and was entitled to a separate hearing on the voluntariness of her consent. She contends that she was not informed of her rights and did not have a hearing to determine whether her consent was voluntary. Moreover, she contends that her relinquishment of parental rights was not voluntary and that the court failed to inquire as to the reasons for her absence from the courtroom. These failures, she argues, violate her statutory and constitutional right to due process.
Parents must consent to terminate the parent-child relationship in open court unless the court makes certain findings of fact. IC 31-6-5-2(c). The Department of Public Welfare argues that Michelle gave her consent in open court; her attorney, as her legal representative, was authorized to act for her in this proceeding as if he were she. We cannot say that by signing voluntary termination papers in the court's library down the hall, Michelle terminated her parent-child relationship in *883 open court. "Open court" necessarily means in the presence of the judge when court is in session. Her attorney cannot be her substitute in this matter. Michelle's predicament is analogous to the guilty plea defendant. A defendant must personally plead guilty; his lawyer may not plead guilty for him in his absence. The parent-child relationship is an important liberty interest in which the state cannot interfere without providing the parents fundamentally fair procedures. Santosky v. Kramer (1982), 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599, 606; Adoption of Hewitt (1979), Ind. App., 396 N.E.2d 938, 940. To allow Michelle's attorney to consent to termination of those rights in her absence, without further safeguards, would be fundamentally unfair and would violate the Indiana statute.
The Indiana Code does, in fact, provide safeguards. Parents may consent to terminate their parent-child relationship out of court if the court makes findings of fact upon the record that the parents (1) gave their consent in writing before a person authorized by law to take acknowledgements, (2) were notified of their rights and the consequences of their actions under IC 31-6-5-3, and (3) failed to appear. IC 31-6-5-2(c). However, before the court may enter a termination order, it must inquire about the reasons for the parents' absence from court. Id.
The record shows that Michelle was advised of the rights and consequences enumerated under IC 31-6-5-3. Her attorney testified that he had informed her before she signed; moreover, the list of rights and consequences was reproduced on each of the "Voluntary Relinquishment of Parental Rights" forms that she signed. This evidence was sufficient for the trial court to conclude that she had been properly advised.
Michelle bases her contention that she is entitled to a separate hearing on the voluntariness of her consent on IC 31-6-5-3(8) which states: "For purposes of [IC 31-6-5-2], the parents must be advised that ... they will receive notice of the hearing at which the court will decide if their consent was voluntary, and that they may appear at the hearing and allege that it was not voluntary." Michelle argues that it is implicit in this provision that the court may not accept a purported voluntary consent until it holds a hearing after the parent signs. This is plainly not what the statute says. The statute says that a parent signing a consent form is entitled to receive notice of the hearing at which the court accepts her consent to relinquish parental rights and at which the court will determine if her consent was voluntary. This case arose under a petition for involuntary termination of parental rights. Michelle had notice of this hearing. Though the hearing's purpose changed when she signed consent forms to relinquish her parental rights, she nevertheless had notice of this hearing, and she chose not to attend or to tell the judge that her consent was not voluntary. As with her other rights, the consent form she signed expressly advised her of her right to appear at the hearing and to dispute the voluntariness of her consent.
Michelle also states that there is nothing in the record that "suggests" that the court inquired about the reasons for her absence in the courtroom. IC 31-6-5-2(c). It would be error for the court to terminate her parental rights without inquiring about her absence from the courtroom. The only record of the hearing is the court's order book entry stating that hearing was held and making findings. The entry is silent as to whether the court inquired about her absence. The court reporter also stated in an affidavit that no record of the oral proceedings had been made. From this record, we are unable to determine that the court did not make an appropriate inquiry.
If no report of all or part of the evidence or proceedings at the hearing was made, a party may prepare a statement of the proceedings from the best available means. Ind.Rules of Appellate Procedure 7.2(A)(3)(c). This statement may be submitted to and settled and approved by the trial court. Id. Michelle made no effort to reconstruct the record. Her case is analogous *884 to one where the record has been destroyed leaving only the docket entry that was insufficient to show a knowing and voluntary guilty plea. When the record is lost, the appellant must attempt to reconstruct it pursuant to Ind.Rules of App.Procedure 7.2(A)(3)(c). Graham v. State (1984), Ind. App., 468 N.E.2d 604, 605. See also Zimmerman v. State (1982), Ind., 436 N.E.2d 1087, 1089. Courts speak only by their records. Taylor v. Butt (1972), 154 Ind. App. 196, 198, 289 N.E.2d 159, 161. Unless what did or did not happen at the hearing is made part of the record pursuant to AR 7.2(A)(3)(c), this court is unable to consider the issue. Dean v. Insurance Co. of North America (1983), Ind. App., 453 N.E.2d 1187, 1191; Indiana and Michigan Electric Co. v. Pounds (1982), Ind. App., 428 N.E.2d 108, 109; Bechert v. Lehe (1974), 161 Ind. App. 454, 461, 316 N.E.2d 394, 399.
Michelle finally contends that she consented under duress to relinquish her parental rights. As proof of duress, Michelle says that she was emotionally upset. However, there is no evidence that at the time of her consent she was incoherent or distraught to such a degree that she could not control her faculties. Brown v. State (1985), Ind., 485 N.E.2d 108, 113; Borkholder v. State (1989), Ind. App., 544 N.E.2d 571, 575. At the hearing on the motion to correct errors, Michelle testified on cross examination that no one physically threatened her to sign. The trial court did not err when it found that Michelle's consent was voluntary. Having also been unable to find any deviation from IC 31-6-5-2, we also find that Michelle was not denied her constitutional right to due process.
Affirmed.
HOFFMAN, P.J., concurs.
STATON, J. dissents and files separate opinion.
STATON, Judge, dissenting.
A separation of a mother from her child by terminating all parental rights should be justified by the record. In the severing of the relationship between parent and child in the appeal before us, the record is silent. There is not a glimmer of comfort from the record before us that all the statutory and constitutional safeguards were observed. As the Majority points out, the record is silent.
"Michelle also states that there is nothing in the record that `suggests' that the court inquired about the reasons for her absence in the courtroom. IC 31-6-5-2(c). It would be error for the court to terminate her parental rights without inquiring about her absence from the courtroom. The only record of the hearing is the court's order book entry stating that hearing was held and making findings. The entry is silent as to whether the court inquired about her absence. The court reporter also stated in an affidavit that no record of the oral proceedings had been made. From this record, we are unable to determine that the court did not make an appropriate inquiry."
If we cannot make a determination that the trial court made an inquiry by its minutes or findings, it is my position that on appeal we must conclude that the trial court did not make an inquiry. If this void in the record cannot be corrected, a new hearing should be granted.
Rules of Appellate Procedure 7.2(C)(2) permits this Court on its "own initiative" to order up from the trial court a supplemental record. The Rule further provides that the "inadequacy of the record shall not constitute a ground for..." precluding a review on the merits. Rules of Appellate Procedure 7.2(A)(3)(c) provides:
If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence of proceedings from the best available means, including his recollection. If submitted contemporaneously with the matter complained of, the statement may be settled and approved by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto within ten (10) days after service. The *885 statement and any objections or prepared amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record.
If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court.
On appeal, this Court cannot assume away that certain safeguards were carefully observed. Our assurance that the proper procedures were observed must come from the record before us. In the present termination of parental rights appeal, there is none. The record is silent. Certainly a parent's rights to its child are as important as those of a criminal defendant who has a right to have a record made of his advisements and the showing of his presence as a matter of record. I dissent and would order a supplemental record as provided by the rules and if this could not be done then I would order a new hearing.
NOTES
[1] Mitchell did not challenge the decision.