In the Matter of Termination of Parent–Child Relationship of Infant ELLIS, A Child, and Tiffany Ellis, a Child, and Tiffany Ellis and Marc Lumley.

Tiffany ELLIS, Appellant,

v.

CATHOLIC CHARITIES, Appellee.

No. 71A03–9701–JV–00022.

Supreme Court of Indiana.

Sept. 26, 1997.

---

1. The child was born out-of-wedlock. The alleged putative father, Marc Lumley, is not a party to this appeal.

---

DICKSON, Justice, dissenting to denial of transfer.

On June 7, 1996, the day after her release from hospitalization for complications of pregnancy and childbirth, the appellant-mother, Tiffany Ellis, signed a consent to the termination of her parental rights.[1] On June 25, 1996, appellee Catholic Charities, a private adoption service, filed a Petition for Termination of the Parent–Child Relationship. A hearing was set for July 30, 1996. The appellant-mother was given proper notice, appeared at the hearing, and asked to withdraw her consent. The court denied her request and granted the appellee's petition, concluding that the mother "knowingly and voluntarily gave her consent to the ... termination of the parent-child relationship." Record at 53. The Court of Appeals, citing *Matter of Adoption of Konar,* 454 N.E.2d 886, 887 (Ind.Ct.App.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 203 (1984), rejected the appellant-mother's claim that, because she appeared but did not consent in open court, her prior written consent was insufficient to permit termination of her parental rights. *Ellis v. Catholic Charities,* 681 N.E.2d 1145, 1148 (1997). While we must often evaluate whether to grant petitions for transfer in light of the need to expeditiously resolve other cases already accepted and awaiting completion, I believe that we should grant transfer in this case to correct substantial error.

At issue is Indiana Code Section 31–6–5–2, which requires that, before parental rights are voluntarily terminated, the "parents must give their consent in open court." IND.CODE § 31–6–5–2(c) (1993). In the absence of such consent, the statute provides an exception authorizing the termination of parental rights when the trial court makes findings of fact that:

(1) the parents gave their consent in writing before a person authorized by law to take acknowledgments;

(2) they were notified of their constitutional and other legal rights and of the consequences of their actions under section 3 of this chapter; and

(3) they failed to appear.

IND.CODE § 31–6–5–2(c) (1993).[2] Prior to 1978, the termination of parental rights was governed by the Adoption Code, Indiana Code Sections 31–3–1–1 to –12. However, in 1979, those provisions were repealed and replaced with the statutes at issue in this case, which are found in the Juvenile Code, Indiana Code Sections 31–6–1–1 to –6. The commentary to the Juvenile Code provides:

> Prior to the enactment of the new Juvenile Code, parental rights to the custody of their children could be terminated in the probate court, either as part of an adoption proceeding or as a separate action under IC 31–3–1–7 . . . The new Juvenile Code repeals the termination of parental rights provisions of the adoption statutes. . . . [and] establishes [31–6–5–2 as] the *exclusive* method for the termination of parental rights.

*Commentary,* IND.CODE § 31–6–5–1 (West 1979) (emphasis added).

In concluding that the appellant-mother's in-court attempt to withdraw or revoke the initial consent was invalid, the Court of Appeals erroneously relied on cases[3] based upon the withdrawal of consent for *adoption* under the Adoption Code, specifically Indiana Code Section 31–3–1–6(j). None of these cases involved the statute governing voluntary termination of parental rights independent of an adoption proceeding upon which the present action is based. This termination statute, Indiana Code Section 31–6–5–2, does not contain a provision analogous to the Adoption Code's provision dealing with withdrawal of consent for adoption. The Court of Appeals thus erred in applying the adoption statute case law to this proceeding for the termination of parental rights.[4]

It is well-established that the interests of the parent involved in the termination of his or her parental rights are of primary constitutional importance. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551, 558 (1972) (acknowledging the "essential" and "basic civil" constitutional rights of parents, rights which are "far more precious . . . than property rights" and which "undeniably warrant deference and, absent a powerful countervailing interest, protection."). The Court of Appeals, discussing the parental rights' termination provisions at issue here, has recognized that "[t]he parent-child relationship is an important liberty interest in which the state cannot interfere without providing the parents fundamentally fair procedures." *In re M.S.,* 551 N.E.2d 881, 883 (Ind.Ct.App.1990), *cert. denied,* 498 U.S. 1121, 111 S.Ct. 1075, 112 L.Ed.2d 1181. The United States Supreme Court likewise held that "parental status termination is irretrievably destructive of the most fundamental family relationship." *M.L.B. v. S.L.J.,* —— U.S. ——, ——, 117 S.Ct. 555, 566, 136 L.Ed.2d 473, 491 (1996) (citation and internal

---

**2.** The statute further provides that, "Before the court may enter a termination order, it must inquire about the reasons for the parents' absence, and may require an investigation by a probation officer to determine whether there is any evidence of fraud or duress and to establish that the parents were competent to give their consent. The investigation must be entered on the record under oath by the person responsible for making it. If there is any competent evidence of probative value that fraud or duress was present when the written consent was given, or that a parent was incompetent, the court shall dismiss the petition or continue the proceeding. The court may issue any appropriate order for the care of the child pending the outcome of the case." IND.CODE § 31–6–5–2(c) (1993).

**3.** *Rhodes v. Shirley,* 234 Ind. 587, 129 N.E.2d 60 (1955); *Bell v. Matter of Adoption of A.R.H.,* 654 N.E.2d 29, 31 (Ind.Ct.App.1995); *Matter of Adoption of Konar,* 454 N.E.2d 886 (Ind.Ct.App.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 203 (1984); *Matter of Snyder,* 418 N.E.2d 1171 (Ind.Ct.App.1981) (applying Indiana Code Section 31–3–1–7 because the judgment was entered before the effective date of the new Juvenile Code).

**4.** In its Reply brief to the Court of Appeals, the appellee comes to a similar conclusion. *See* Brief of Appellee at 17 ("For some reason [the appellant-mother] thinks that I.C. 1–3–1–6 applies to these proceedings. That section is the adoption procedure, while this action is a termination of parental rights procedure.").

quotations omitted). The Court stated that a case "involving the State's authority to sever permanently a parent-child bond demands the close consideration the Court has long required when a family association so undeniably important is at stake." *Id.* at ——, 117 S.Ct. at 564, 136 L.Ed.2d at 488.

Indiana case law establishes that "[c]ompliance with the statutory procedure of the juvenile code is *mandatory* to effect a termination of parental rights [under Indiana Code Section 31–6–5–2]." *Styck v. Karnes,* 462 N.E.2d 1327, 1329 (Ind.Ct.App.1984) (emphasis added). Furthermore, Indiana Code Section 31–6–5–2 is "the *exclusive* statutory procedure for a voluntary termination of parental rights." *Holderness v. Holderness,* 471 N.E.2d 1157, 1160 (Ind.Ct.App. 1984) (emphasis added) (noting "IND.CODE 31–6–5–1 *et seq.* is entitled 'Termination of the Parent–Child Relationship': Sections 2 and 3 provide the procedures to be followed for termination where the parents consent, and Section 4 sets out the procedures for involuntary termination."). Of the decisions which have cited or interpreted Indiana Code Section 31–6–5–2, none have involved a parent who initially consents to the termination of parental rights but comes into court and repudiates the consent. There exists no Indiana statutory provision authorizing a court to terminate parental rights in such a circumstance.

Of course a prospective adopting parent or parents may, under certain circumstances prescribed by the Adoption Code, seek to adopt a child notwithstanding the withdrawal of consent by the child's parent.[5] In the present case, however, the appellee sought a voluntary, general termination of parental rights under the Juvenile Code provisions which permit voluntary termination of parental rights only when the parent either consents in open court or fails to appear but previously has executed a proper written consent. Here, the mother appeared but did not give consent in open court and, because she did not "fail to appear," the second alternative is not applicable. Because of the clear failure to comply with the applicable statutory provisions in this case, I believe it unwise to deny transfer.

SULLIVAN, J., concurs.

---

5. The court in *Holderness* recognized this as well: "The only other method of extinguishing parental rights is indirect, through the adoption procedure. In an adoption proceeding, the parental rights are irretrievably terminated once the decree of adoption has been entered. IND.CODE 31–3–1–6(f)." *Holderness,* 471 N.E.2d at 1159. As in the case at bar, the *Holderness* court held that "[s]ince [the parties] never filed the adoption petition, the only method remaining for terminating ... parental rights is the statutory procedure described in Ind.Code § 31–6–5–2." *Id.* at 1159–60.