712 N.E.2d 1081 (1999)
In the Matter of the Termination of the Parent-Child Relationship of J.W.W.R and G.L.R., Children, and Jeff Reece and Penny Reece, Their Parents.
Penny Wight, Appellant-Respondent,
v.
Kosciusko County Office of Family & Children, Appellee-Petitioner.
No. 43A03-9809-JV-396.
Court of Appeals of Indiana.
July 14, 1999.
*1082 Christopher D. Kehler, Kehler Law Office, P.C., Warsaw, Indiana, Attorney for Appellant.
Michael W. Reed, Reed & Earhart, Warsaw, Indiana, Attorney for Appellee.

OPINION
BROOK, Judge

Case Summary
Appellant-petitioner Penny M. Wight ("Wight")[1] appeals from the judgment entered by the Kosciusko Superior Court that terminated her parental rights with regard to her two children: J.W.W.R., born on September 9, 1993, and G.L.R., born on June 13, 1996.

Issue
Wight presents several issues for our consideration, which we consolidate and rephrase as whether the trial court erred in terminating Wight's parental rights to her two children, J.W.W.R. and G.L.R.

Facts and Procedural History
The facts relevant to this appeal disclose that on September 17, 1997, Wight executed a Voluntary Relinquishment of Parental Rights and a Consent to Adoption for her children, J.W.W.R. and G.L.R. These forms were executed in front of Glenda Simpson ("Simpson"), a notary public with the Sheriff's Department. Prior to signing the forms, Nina Steinbarger ("Steinbarger"), Wight's caseworker with Kosciusko County Office of Family and Children ("KCOFC"), read the consent forms regarding both children to Wight and asked if she understood the terms; she responded affirmatively.
On February 2, 1998, KCOFC filed a Voluntary Petition to Terminate the Parent-Child Relationship between Wight and her children. The petition alleged that Wight had knowingly and voluntarily consented to the termination of the parent-child relationship. A hearing was scheduled for August 8, 1998, to ascertain if Wight had voluntarily consented to the termination of her parental rights. Prior to the hearing, Wight had written numerous letters to the court, alleging that her consent was obtained through harassment from Steinbarger.
At the hearing, Wight withdrew her consent to adoption and voluntary relinquishment *1083 of her parental rights. Wight testified that she had felt pressured to sign the consent forms because she had been facing prison time and because Steinbarger had harassed her and her family. Wight stated that Steinbarger had indirectly called her a "slut" and had informed her that she would never get her children back. Steinbarger denied Wight's allegations and testified that she had discussed terminating Wight's parental rights voluntarily or involuntarily and that KCOFC had been prepared to proceed either way. She had also discussed the possibility of Wight's children being adopted and arranged for Wight to meet with the potential adoptive parent.
The trial court concluded that Wight had been notified and advised of her constitutional and other legal rights and the consequences of her action and had given her consent to the termination before a legally authorized person. The trial court also determined that Wight had knowingly and voluntarily consented without duress and coercion to the termination of the parent-child relationship and to the adoption of her children. Therefore, the trial court terminated the parent-child relationship between Wight and her children.

Discussion and Decision

I. Standard of Review
Wight maintains that the trial court erred in terminating her parental rights because her consents to adoption and voluntary relinquishment of parental rights (1) were not signed voluntarily; and (2) were obtained through fraud and duress. The trial court in this case entered its own findings of fact pursuant to Ind. Trial Rule 52(A). "When the trial court enters such findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found." Nelson v. Marchand, 691 N.E.2d 1264, 1267 (Ind.Ct. App.1998). In reviewing the judgment, this Court must determine whether the evidence supports the findings and whether the findings support the judgment. Id. We will reverse a judgment only when it is shown to be clearly erroneous, "i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings." Id. For findings of fact to be clearly erroneous, the record must lack any evidence or reasonable inferences from the evidence to support them. Id. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. Id. Finally, a general judgment may be affirmed on any theory supported by the evidence presented at trial. Id.

A. Voluntary Consents to Adoption and Termination of Parental Rights
Wight argues that her failure to give her consent in open court precluded the trial court from terminating her parental rights. It is well established that the Fourteenth Amendment of the United States Constitution protects the traditional right of parents to establish a home and raise their children. In the Matter of M.B., 666 N.E.2d 73, 76 (Ind.Ct.App.1996), trans. denied, citing In the Matter of Tucker, 578 N.E.2d 774, 778 (Ind.Ct.App.1991), trans. denied. However, the constitutionally protected interests of the parents are not absolute. In the Matter of M.B., 666 N.E.2d at 76. Because the parent-child relationship is an important liberty interest, the state cannot interfere with those rights without providing the parents fundamentally fair procedures. In re M.S., 551 N.E.2d 881, 883 (Ind.Ct.App.1990), cert. denied, 498 U.S. 1121, 111 S.Ct. 1075, 112 L.Ed.2d 1181 (1991). IND. CODE § 31-35-1-6 provides that
[t]he parents must give their consent [to the termination of their parental rights] in open court unless the court makes findings of fact upon the record that: (1) the parents gave their consent in writing before a person authorized by law to take acknowledgments; (2) they were notified of their constitutional and other legal rights and of the consequences of their actions under section 12 of this chapter [IND. CODE § 31-35-1-12];[2] and (3) they failed to appear. *1084 IND. CODE § 31-35-1-12 mandates that "a parent signing a consent form is entitled to receive notice of the hearing at which the court accepts her consent to relinquish parental rights and at which the court will determine if her consent was voluntary." In the Matter of Termination of Parent-Child Relationship of Infant Ellis, 681 N.E.2d 1145, 1149 (Ind.Ct.App.1997), trans. denied, quoting In re M.S., 551 N.E.2d at 883 (emphasis in the original).
Here, Wight signed the consent forms in front of Steinbarger and Simpson, a notary public. Steinbarger stated that she had spent 30 to 60 minutes with Wight reviewing and signing the termination and adoption documents. Steinbarger also testified that Wight had been advised of her rights and the consequences enumerated under IND. CODE § 31-35-1-12 before she signed the consent forms. Moreover, the list of rights and consequences was reproduced on each of the Voluntary Relinquishment of Parental Rights forms that she signed. Wight read the consent forms and stated that she understood the documents and her rights. This evidence was sufficient for the trial court to conclude that Wight had knowingly and voluntarily consented to the termination of the parent-child relationship before a person authorized by law to take the acknowledgment after being advised of her constitutional and statutory rights.
However, Wight asserts that the court's order was erroneous because "there was no compliance with Indiana Code 31-35-1-6(3) because Wight appeared at the hearing." Wight urges this Court to adopt Justice Dickson's dissent in the denial of transfer in Infant Ellis, 685 N.E.2d 476 (Ind. 1997). In Infant Ellis, Justice Dickson stated that
[i]n concluding that the appellant-mother's in-court attempt to withdraw or revoke the initial consent was invalid, the Court of Appeals erroneously relied on cases based upon the withdrawal of consent for adoption under the Adoption Code, specifically Indiana Code 31-3-1-6(j). None of these cases involved the statute governing voluntary termination of parental rights independent of an adoption proceeding upon which the present is based. This termination statute, Indiana Code Section 31-6-5-2, does not contain a provision analogous to the Adoption Code's provision dealing with withdrawal of consent for adoption. The Court of Appeals thus erred in applying the adoption statute case law to this *1085 proceeding for the termination of parental rights.
685 N.E.2d at 477 (emphasis in the original).
Under IND. CODE § 31-35-1-12(8), parents may appear at the hearing for the termination of parental rights and allege that their consent was not voluntary, and the trial court must determine whether the parents' consent to termination was indeed voluntary. While it is true that the termination statute does not contain a provision concerning the withdrawal of consent, IND. CODE § 31-35-1-12(1) specifically limits a parent's ability to revoke or set aside her consent "unless it was obtained by fraud or duress or unless the parent is incompetent." If there was any evidence that fraud or duress was present when the written consent was given, the court "shall dismiss the petition or continue the proceeding." IND. CODE § 31-35-1-7(c). Here, Wight appeared in court and alleged that her consent had not been voluntary because she had been coerced and under duress. The trial court conducted a hearing where it heard evidence and determined that Wight's consent had been voluntary and had been obtained without coercion or duress. Because Wight failed to establish that her consent was obtained by fraud or duress, her consent to termination cannot be revoked or set aside.

B. Consent Under Duress and Fraud
Wight next suggests that the trial court erred in finding that she had signed the consent to adoption and voluntary relinquishment of parental rights without coercion, fraud, or duress. It is clear that a parent's ability to withdraw his consent to the termination of his parental rights is extremely limited. Infant Ellis, 681 N.E.2d at 1149. A parent who executes a voluntary relinquishment of parental rights is bound by the consequences of such action, unless the relinquishment was procured by fraud, undue influence, duress, or other consent-vitiating factors. Snyder v. Shelby County Department of Public Welfare, 418 N.E.2d 1171, 1180 (Ind.Ct.App.1981). IND. CODE § 31-35-1-7 provides in pertinent part:
(a) Before the court may enter a termination order, the court:
(1) must inquire about the reasons for the parents' absence; and
(2) may require an investigation by a probation officer to:
(A) determine whether there is any evidence of fraud or duress; and
(B) establish that the parents were competent to give their consent.
(c) If there is any competent evidence of probative value that:
(1) fraud or duress was present when written consent was given; or
(2) a parent was incompetent;
a trial court shall dismiss a petition or continue the proceeding.
Here, Wight has not directed this Court to any evidence that Steinbarger's alleged harassment rose to the level of coercion or duress to overcome her volition. Wight admitted that she was aware that she did not have to sign the consent forms, and that she was free to leave Steinbarger's office at any time before signing the forms. Wight also stated that she had not been under the influence of any drugs or alcohol, nor had she been incompetent or suffering from any mental illness at the time the documents were signed. Both Steinbarger and Simpson testified that Wight had not appeared to be under any force, coercion, or duress when she signed the documents.
Moreover, the record reveals that Wight carefully thought about terminating her parental rights. Wight indicated that she had contemplated terminating her parental rights one week before to signing the documents. On September 10, 1997, Wight requested that Steinbarger prepare the termination documents for her to sign. After she met with the potential adoptive parent, Wight again stated that she wanted to sign the termination documents. Steinbarger read the termination documents to Wight before she signed them. Wight also testified that she had understood that once she signed the documents she could not revoke her consent unless she had been coerced or under duress. We find no evidence that Wight's consent was executed under duress, fraud, or other consent-vitiating factors; rather, the evidence reveals that Wight's consent was voluntary. Therefore, the trial court did not err in finding that Wight knowingly and voluntarily *1086 consented to the termination of her parental rights without coercion, fraud, or duress.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed.
BAKER, J., concurs.
RUCKER, J., dissents with opinion.
RUCKER, Judge, dissenting
I respectfully dissent. I read the statutes concerning the voluntary termination of the parent-child relationship as specifically requiring that consent to terminate must be given "in open court." Ind.Code § 31-35-1-6. Only where the parent "fail[s] to appear" in open court is this requirement inapplicable. In that instance the parent's prior written consent will suffice to terminate her parental rights provided (i) the parent gave her written consent to an authorized person, and (ii) the parent was provided with notice of her legal and constitutional rights and the consequences of her actions. Id.
When reviewing a statute our main objective is to ascertain and implement the intent of the legislature. State Employees' Appeals Comm'n v. Barclay, 695 N.E.2d 957, 961 (Ind.Ct.App.1998), trans. denied. To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. Murray v. Hamilton County Sheriff's Dep't, 690 N.E.2d 335, 339 (Ind.Ct.App.1997). Here, the majority takes the position that when a parent appears in open court and indicates she does not consent to termination, then the court need only conduct a hearing to determine whether the initial written consent was entered knowingly and voluntarily. In my view however, the termination statute (as opposed to the adoption statute) presents a legislative scheme that not only ensures that a parent's written consent is knowing and voluntary but also ensures that the parent's agreement to terminate her parent/child relationship has not changed. When a parent does not appear in open court, we may presume that she still is willing to terminate the relationship. The only question remaining is whether she was properly advised of her legal and constitutional rights and whether the consent was entered knowingly and voluntarily. However, once the parent appears in open court, if she does not consent to termination, then the previously signed consent is irrelevant.
I acknowledge that this court was faced with facts similar to those here in Matter of Parent-Child Rel. Of Infant Ellis, 681 N.E.2d 1145, 1148 (Ind.Ct.App.1997), trans. denied. In that case the court rejected a reading of the statute that would only allow parental rights to be terminated by a signed consent form if the parent failed to appear in court. However, as Justice Dickson noted, this court's opinion was wrongly decided. "[T]he Court of Appeals erroneously relied on cases based upon the withdrawal of consent for adoption under the Adoption Code. . . ." Matter of Infant Ellis, 685 N.E.2d 476, 477 (Ind.1997) (emphasis in the original, footnote omitted). I agree with Justice Dickson. The statute governing the voluntary termination of parental rights does not give the trial court the authority to terminate parental rights where a parent initially consents to termination but comes to court and repudiates consent. I therefore dissent and would reverse the judgment of the trial court.
NOTES
[1] Wight was married to Jeffrey W. Reece when she had her two children, J.W.W.R. and G.L.R.; however, she assumed her maiden name after her divorce.
[2] IND. CODE § 31-35-1-12 provides:

For purposes of sections 6 and 8 of this chapter, the parents must be advised that:
(1) their consent is permanent and cannot be revoked or set aside unless it was obtained by fraud or duress or unless the parent is incompetent;
(2) when the court terminates the parent-child relationship:
(A) all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support pertaining to the relationship, are permanently terminated; and
(B) their consent to the child's adoption is not required;
(3) the parents have a right to the:
(A) care;
(B) custody; and
(C) control;
of their child as long as the parents fulfill their parental obligations;
(4) the parents have a right to a judicial determination of any alleged failure to fulfill their parental obligations in a proceeding to adjudicate their child a delinquent child or a child in need of services;
(5) the parents have a right to assistance in fulfilling their parental obligations after a court has determined that the parents are not doing so;
(6) proceedings to terminate the parent-child relationship against the will of the parents can be initiated only after:
(A) the child has been adjudicated a delinquent child or a child in need of services and removed from their custody following the adjudication; or
(B) a parent has been convicted and imprisoned for an offense listed in IND. CODE § 31-35-3-4 (or has been convicted and imprisoned for an offense listed in IND. CODE § 31-6-5-4.2(a) before its repeal), the child has been moved to the custody of the parents under a dispositional decree, and the child has been removed from the custody of the parents for six (6) months under a court order;
(7) the parents are entitled to representation by counsel, provided by the state if necessary, throughout any proceedings to terminate the parent-child relationship against the will of the parents; and
(8) the parents will receive notice of the hearing at which the court will decide if their consent was voluntary, and the parents may appear at the hearings and allege that the consent was not voluntary.