Mary NEAL, Appellant–Respondent,

v.

In the Matter of the TERMINATION OF the PARENT–CHILD RELATIONSHIP OF M.N. and H.N. Children, and Mary Neal, Mother and Michael Neal, Sr., Father, Appellee–Petitioner.

No. 17A03–0101–JV–8.

Court of Appeals of Indiana.

May 16, 2002.

Suzanne Shuman Rister, Antwerp, OH, Attorney for Appellant.

W. Eric Weber, Auburn, IN, Attorneys for Appellee.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

Mary Neal signed a Voluntary Relinquishment of Parental Rights form with respect to each of her two children, but later appeared in open court, repudiated her written consent, and expressed her desire to retain her parental rights. The trial court found that Neal's written consent was made voluntarily and terminated

her parental rights. Neal appeals and presents a single dispositive issue for our review, namely, whether her voluntary written consent is invalid because it was not acknowledged in open court pursuant to Indiana Code Section 31–35–1–6(a).

We reverse.[1]

## FACTS AND PROCEDURAL HISTORY

On October 5, 2000, Neal, the natural mother of M.N. and H.N., attended a case plan review meeting at the DeKalb County Office of the Division of Family and Children ("DFC") with DFC caseworker Sandi Anderson and the children's Guardian Ad Litem, Hugh Taylor. The purpose of the meeting was to discuss the DFC's case plan for Neal's children, which included the DFC's intention to file a petition to terminate Neal's parental rights. During the meeting, Neal inquired whether she could voluntarily terminate her parental rights with respect to the children. In response to Neal's inquiry, Anderson explained that voluntary termination was an option and read her the consent forms. Anderson advised Neal that an attorney could be appointed to assist her with her decision and that she could take the consent forms with her if she wanted to take some time to think about the matter. Neal declined Anderson's offer and opted to sign the consent forms at that time.

Later that day, Neal changed her mind and decided that she did not want to terminate her parental rights. When the DFC became aware that Neal had decided against the voluntary termination, the DFC filed a separate petition for the involuntary termination of Neal's parental rights.

On October 16, 2000, the trial court held a hearing to determine whether Neal's prior written consent was made voluntarily. Neal appeared in court and testified that she changed her mind after she signed the consent forms and that she was no longer willing to terminate her rights. Neal also testified that Anderson had pressured her to sign the consent forms. The trial court found that Neal's prior written consent to the termination of her parental rights was voluntary and that her attempt to revoke that consent was not valid. The trial court ordered that Neal's parental rights with respect to both children be terminated. Neal appeals from that order.

## DISCUSSION AND DECISION

The issue presented here is not an issue of first impression for this court. We have previously addressed whether a parent can withdraw her written consent to the voluntary termination of parental rights, and we concluded that written consent is irrevocable, and, therefore, valid, unless it was induced by fraud. See *Ellis v. Catholic Charities*, 681 N.E.2d 1145 (Ind.Ct.App. 1997), *trans. denied*, and *In the Matter of J.W.W.R. and G.L.R.*, 712 N.E.2d 1081 (Ind.Ct.App.1999), *trans. denied*. In those cases, however, we relied on case law regarding consent to *adoption* and did not squarely address the statutory requirement that a parent's voluntary consent to the termination of parental rights be given in open court. See Ind.Code § 31–35–1–6(a). In this case, we rely on statutory construction to resolve the question of whether a parent must give her voluntary consent in open court or whether written consent, without more, is sufficient.

The interpretation of a statute is a question of law that is reviewed de novo. *Golden Rule Ins. Co. v. McCarty*, 755

---

**1.** We note that this appeal has no impact on the DFC's separate, pending petition for the involuntary termination of Neal's parental rights.

N.E.2d 1104, 1106 (Ind.Ct.App.2001). The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. *Hendrix v. State,* 759 N.E.2d 1045, 1047 (Ind.2001). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute. *Id.* To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *J.W.W.R.,* 712 N.E.2d at 1086 (Rucker, J., dissenting).

In order for the court to accept a parent's voluntary consent to the termination of parental rights, Indiana Code Section 31–35–1–6(a) ("Section 6(a)") requires that:

the parents *must give their consent in open court unless* the court makes findings of fact upon the record that:

(1) the parents gave their consent in writing before a person authorized by law to take acknowledgments;

(2) the parents were notified of the constitutional and other legal rights and of their actions under section 12 of this chapter; *and*

(3) the parents failed to appear.

(Emphases added).

In addition, Indiana Code Section 31–35–1–12 ("Section 12") requires that the following information be given to parents who voluntarily terminate parental rights:

For purposes of sections 6 and 8 of this chapter, the parents must be advised that:

(1) *their consent is permanent and cannot be revoked or set aside unless it was obtained by fraud or duress or unless the parent is incompetent;*

(2) when the court terminates the parent-child relationship:

(A) all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support pertaining to the relationship, are permanently terminated; and

(B) their consent to the child's adoption is not required;

(3) the parents have a right to the:

(A) care;

(B) custody; and

(C) control; of their child as long as the parents fulfill their parental obligations;

(4) the parents have a right to a judicial determination of any alleged failure to fulfill their parental obligations in a proceeding to adjudicate their child a delinquent child or a child in need of services;

(5) the parents have a right to assistance in fulfilling their parental obligations after a court has determined that the parents are not doing so;

(6) proceedings to terminate the parent-child relationship against the will of the parents can be initiated only after:

(A) the child has been adjudicated a delinquent child or a child in need of services and removed from their custody following the adjudication; or

(B) a parent has been convicted and imprisoned for an offense listed in IC 31–35–3–4 (or has been convicted and imprisoned for an offense listed in IC 31–6–5–4.2(a) before its repeal), the child has been removed from the custody of the parents under a dispositional decree, and the child has been removed from the custody of the parents for six (6) months under a court order;

(7) the parents are entitled to representation by counsel, provided by the

state if necessary, throughout any proceeding to terminate the parent-child relationship against the will of the parents; and

(8) *the parents will receive notice of the hearing at which the court will decide if their consent was voluntary and the parents may appear at the hearing and allege that the consent was not voluntary.*

(Emphases added).

Neal contends that the plain language of Section 6(a) requires that a parent's voluntary consent to the termination of parental rights be given in open court, unless the exceptions set out in the statute are satisfied. The DFC, in turn, points out that Section 12 provides that a parent's consent "is permanent and cannot be revoked or set aside unless it was obtained by fraud or duress or unless the parent is incompetent," and that a hearing will be held to determine the voluntariness of her consent. The DFC essentially maintains that these provisions of Section 12 trump the open court requirement set out in Section 6(a). We cannot agree.

■■■ Section 6(a) expressly requires that a parent's consent to the termination of her parental rights be made in open court unless all three of the listed exceptions apply. The issue is whether that section conflicts with Section 12, which states that consent cannot be revoked and that a hearing will be held to determine whether a parent's consent was voluntary. At first glance, Section 12 might appear inconsistent with Section 6(a) regarding whether consent can be revoked once it is given. But that inconsistency only exists if we equate "written consent" with "consent" for purposes of construing Section 12(1)[2].

In other words, the DFC reads the statute to mean that written consent can *never* be revoked. But, given the clear meaning of "consent" as set out in Section 6(a), and given that Section 12 specifically refers back to Section 6, it is plain that consent cannot be revoked once it is *obtained pursuant to Section 6(a)*, which requires that written consent be acknowledged in open court or that all three exceptions are satisfied. In addition, once consent is obtained under Section 6(a), the court determines whether that consent was made voluntarily. Construed in this manner, the open court provision of Section 6(a) is consistent with both the irrevocability and voluntariness provisions of Section 12.

Indeed, when the sections are read together, it is apparent that the legislature established a procedure whereby a parent *who consents in open court* cannot thereafter revoke that consent unless it was obtained by fraud or duress. As Judge Rucker (now Justice Rucker) observed:

In my view [ ] the termination statute (as opposed to the adoption statute) presents a legislative scheme that not only ensures that a parent's written consent is knowing and voluntary but also ensures that the parent's agreement to terminate her parent/child relationship has not changed. When a parent does not appear in open court, we may presume that she still is willing to terminate the relationship. The only question remaining is whether she was properly advised of her legal and constitutional rights and whether the consent was entered knowingly and voluntarily. However, *once the parent appears in open court, if she does not consent to termination, then the previously signed consent is irrelevant.* ... The statute governing the voluntary termination of

---

**2.** We note that there is no statutory provision for the voluntary termination of parental

rights by written consent.

parental rights does not give the trial court the authority to terminate parental rights where a parent initially consents to termination but comes to court and repudiates consent.

*J.W.W.R.*, 712 N.E.2d at 1086 (Rucker, J., dissenting) (emphasis added).

In *Ellis v. Catholic Charities*, 681 N.E.2d 1145 (Ind.Ct.App.1997),[3] this court addressed the applicability of the open court requirement to circumstances similar to those presented in this case, and we held that a mother's written consent to the termination of her parental rights was valid despite the fact that it was not given in open court and despite her attempt to revoke that consent at the subsequent voluntariness hearing. But in *Ellis*, we relied on our opinion in *In the Matter of the Adoption of Konar*, 454 N.E.2d 886 (Ind.Ct.App.1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 203 (1984), which involved a mother's attempt to revoke her consent to *adoption* under the Adoption Code. And when Ellis sought transfer to our supreme court, Justice Dickson wrote a dissenting opinion to the court's denial of transfer in which he discussed this court's erroneous reliance on *Konar* to resolve the issue of Ellis' consent to the termination of parental rights.

In his dissenting opinion to the denial of transfer in *Ellis*, Justice Dickson pointed out that:

[p]rior to 1978, the termination of parental rights was governed by the Adoption Code, Indiana Code Sections 31–3–1–1 to 12. However, in 1979, those provisions were repealed and replaced with the statutes at issue in this case, which are found in the Juvenile Code, [Indiana Code Sections 31–35–1–1 to 12]. The commentary to the Juvenile Code provides:

Prior to the enactment of the new Juvenile Code, parental rights to the custody of their children could be terminated in the probate court, either as part of an adoption proceeding or as a separate action.... The new Juvenile Code repeals the termination of parental rights provisions of the adoption statutes .... [and] establishes [31–35–1–6 as] the exclusive method for the termination of parental rights.

*Ellis v. Catholic Charities*, 685 N.E.2d 476, 477 (Dickson, Justice, dissenting from denial of transfer, with Justice Sullivan concurring). And Justice Dickson noted that "Indiana case law establishes that '[c]ompliance with the statutory procedure of the juvenile code is mandatory to effect a termination of parental rights[.]' " *Id.* at 478 (citation omitted). Justice Dickson concluded that the termination statute "permit[s] voluntary termination of parental rights only when the parent either consents in open court or fails to appear but previously has executed a proper written consent." *Id.* We agree.

In *Ellis*, this court also relied on our opinion in *In the Matter of M.S.*, 551 N.E.2d 881 (Ind.Ct.App.1990), *trans. denied*, *cert. denied*, 498 U.S. 1121, 111 S.Ct. 1075, 112 L.Ed.2d 1181 (1991), to hold that the "proper [statutory] procedure" for the voluntary termination of parental rights was followed. But unlike either *Ellis* or this case, the mother in *M.S.* did *not* attend the hearing to revoke her written consent. Accordingly, this court's reliance on *M.S.* as precedent in *Ellis* was misplaced. In *M.S.*, the mother signed a voluntary consent on the day of a hearing on the DFC's petition to involuntarily terminate her parental rights. Her attorney presented the consent form to the trial

---

**3.** The facts of *J.W.W.R.* are similar to those presented here, but, in that case, we focused on Section 12 without attempting to reconcile that statute with the open court provision set out in Section 6(a).

court at the hearing that day, and the mother did not appear to contest the voluntary termination. We held that pursuant to the statute (now I.C. 31–35–1–6(a)), because the mother "failed to appear" the consent was valid.[4] *Id.* at 883.

In sum, we conclude that statutory construction of Indiana Code Sections 31–35–1–6 and –12 resolves the issue presented here. We adopt the reasoning in Justice Dickson's dissent to the denial of transfer in *Ellis*, 685 N.E.2d at 477, and Judge Rucker's (now Justice Rucker) reasoning in his dissent in *J.W.W.R.*, 712 N.E.2d at 1086. We hold that under the Juvenile Code, a parent's written consent to the voluntary termination of her parental rights is invalid unless she appears in open court to acknowledge her consent to the termination, or unless all three of the exceptions set out in Indiana Code Section 31–35–1–6(a) are satisfied. Thus, the trial court erred when it terminated Neal's parental rights with respect to M.N. and H.N. based solely upon her prior out-of-court written consent when she appeared in court and repudiated her consent.

Reversed.

BAKER and MATTINGLY–MAY, JJ., concur.

---

4. In *M.S.*, the mother argued that she was entitled to a separate hearing on the voluntariness of her written consent. We disagreed and stated:

The statute [now I.C. 31–35–1–12(8)] says that a parent signing a consent form is entitled to receive notice of the hearing at which the court accepts her consent to relinquish parental rights and at which the court will determine if her consent was voluntary. This case arose under a petition for involuntary termination of parental rights. [The mother] had notice of this hearing. Though the hearing's purpose changed when she signed consent forms to relinquish her parental rights, she nevertheless had notice of this hearing, and she chose not to attend or to tell the judge that her consent was not voluntary.

*M.S.*, 551 N.E.2d at 883. Thus, the "open court" provision in Indiana Code Section 31–35–1–6 and the "voluntariness hearing" requirement in Indiana Code Section 31–35–1–12(8) can be combined in a single hearing where the trial court both "accepts" the written consent *and* determines the voluntariness of that consent.