Mary NEAL, Appellant (Respondent below),

v.

In the Matter of the Termination of the Parent–Child Relationship of M.N. and H.N., Children, and Michael Neal, Sr., Father, by the DeKALB COUNTY DIVISION OF FAMILY AND CHILDREN, Appellee (Petitioner below).

No. 17S03–0209–JV–470.

Supreme Court of Indiana.

Sept. 25, 2003.

Suzanne Shuman Rister Antwerp, OH, Attorneys for Appellant.

W. Eric Weber, Auburn, IN, Attorneys for Appellee.

RUCKER, Justice.

This opinion resolves the question of whether a parent may initially consent to the termination of her parental rights and later appear in open court and change her mind. We hold that she may.

### Facts and Procedural History

Mary Neal is the natural parent of H.N. born February 5, 1989, and M.N. born August 10, 1990. In September 1999, both children were adjudged to be Children in Need of Services, made wards of the court, and placed in foster care. Under provisions of a dispositional decree and a parental participation order, the Dekalb County Office of the Division of Family and Children ("DFC") offered Neal a variety of services designed to assist her as a parent and to facilitate reunification with the children. Determining that Neal had failed to accept the services or that the services offered had been ineffective, DFC decided to seek the involuntary termination of Neal's parent-children relationship. To that end, Neal was invited to attend a case plan review scheduled for October 5, 2000. The meeting was held at the DFC offices.

In attendance were Neal, the Case Manager, and the Guardian Ad Litem for H.N. and M.N. While informing Neal that she intended to file a petition to terminate Neal's parental rights, the Case Manager along with the Guardian Ad Litem explored with Neal the option of voluntarily relinquishing her parental rights. During the discussion the Case Manager read to Neal the necessary consent forms for a voluntary relinquishment of parental rights, which Neal acknowledged she understood. The Case Manager also advised Neal that voluntary relinquishment of parental rights was irrevocable. When Neal informed the Case Manager that she wanted to sign the form, the Case Manager told her that she did not have to sign the forms that day and that she should discuss the matter with someone, preferably an attorney. Neal declined and signed one form consenting to the termination of her parental rights to H.N. and a separate form consenting to the termination of her parental rights to M.N.

Later that day Neal decided that she did not want to relinquish her parental rights voluntarily to either child. The record is unclear as to how DFC became aware of that fact. In any event after apparently being so advised, on October 11, 2000, DFC filed a petition with the trial court for the involuntary termination of Neal's parental rights.[1] On October 16, 2000, Neal appeared in court for what was described as a Voluntariness Hearing at which Neal "would confirm the voluntariness of her signing Voluntary Relinquishment of Parental Rights forms." R. at 3. After acknowledging that she had signed forms that "were to have [her] give up [her] rights to [her] children" Neal told the trial court that she "had time to think

---

**1.** This petition apparently is still pending before the trial court and is not affected by our

holding today.

about it and [would] like to have a Court-appointed lawyer" to give her advice. *Id.* at 4. The trial court honored the request, appointed counsel, and the matter was continued.

Thereafter on December 4, 2000, the trial court conducted a hearing to determine whether Neal's prior written consent was voluntarily given. Represented by counsel, Neal testified essentially that although she signed the consent forms she changed her mind and did not want to terminate her parental rights. Neal also testified that she felt pressured to sign the forms. The trial court determined that Neal's attempt to "retract or revoke her October 5, 2000, consent to termination of her parental rights is not a valid retraction or valid revocation and it does not affect the validity of her prior voluntary relinquishment of her parental rights." Appellant's App. at 7. The trial court ordered that Neal's parental rights with respect to both children be terminated.

On review, the Court of Appeals reversed on grounds that Neal had not consented to the voluntary termination of her parental rights in open court. *Neal v. Termination of Parent–Child Relationship of M.N. & H.N.*, 768 N.E.2d 485, 490 (Ind.Ct.App.2002). The Court acknowledged that at least two other panels of the Court of Appeals reached contrary conclusions on facts similar to those presented in this case.[2] Having previously granted transfer, we now accept DFC's invitation to resolve the conflict in the Court of Appeals' opinions. In so doing we reverse the judgment of the trial court.

### Discussion

■ The voluntary termination of the parent-child relationship is controlled by statute. In order for the court to accept a parent's voluntary consent to the termination of parental rights, Indiana Code section 31–35–1–6(a) provides:

> [T]he parents must give their consent in open court unless the court makes findings of fact upon the record that:
>
> (1) the parents gave their consent in writing before a person authorized by law to take acknowledgments;
>
> (2) the parents were notified of their constitutional and other legal rights and of the consequences of their actions under section 12 of this chapter; and
>
> (3) the parents failed to appear.

Ind.Code § 31–35–1–6(a) ("Section 6"). As can be readily seen, this statute specifically requires that consent to terminate must be given "in open court." Only where the parent "fail[s] to appear" in open court is this requirement not applicable. In that instance the parent's prior written consent will suffice to terminate parental rights provided (i) the parent gave written consent to an authorized person, and (ii) the parent was provided with notice of the parent's legal and constitutional rights and the consequences of the parent's action. *Id.* If this were the end of the matter, then resolving this case would be rather straightforward. The record is clear that Neal did not give her consent to terminate in open court. Thus, under this statute it would appear that the trial court was without authority to terminate Neal's parental rights.

However, another provision of the Indiana Code provides in relevant part:

> For purposes of sections 6 and 8 [I.C. § 31–35–1–6 and I.C. § 31–35–1–8] of this chapter, the parents must be advised that:

---

**2.** See *In re Termination of Parent–Child Relationship of J.W.W.R and G.L.R.*, 712 N.E.2d 1081 (Ind.Ct.App.1999), *trans. denied; In re* *Termination of the Parent–Child Relationship of Infant Ellis*, 681 N.E.2d 1145 (Ind.Ct.App. 1997), *trans. denied.*

(1) their consent is permanent and cannot be revoked or set aside unless it was obtained by fraud or duress or unless the parent is incompetent;

\* \* \*

(8) the parents will receive notice of the hearing at which the court will decide if their consent was voluntary and the parents may appear at the hearing and allege that the consent was not voluntary.

I.C. § 31–35–1–12 ("Section 12"). It is this statute to which DFC points in arguing that when a parent appears in open court as provided under Section 6 and indicates that she does not consent to termination, the court need only conduct a hearing to determine whether the initial written consent was entered knowingly and voluntarily. *See J.W.W.R.*, 712 N.E.2d at 1085 (declaring that Section 12 "specifically limits a parent's ability to revoke or set aside her consent 'unless it was obtained by fraud or duress or unless the parent is incompetent' ").

In DFC's view, the "in open court" provision of Section 6 is essentially a nullity. Our colleagues on the Court of Appeals acknowledged the apparent inconsistency between Sections 12 and 6. However, in reversing the judgment of the trial court, the Court of Appeals determined that the two statutes could be harmonized. Although we agree that the judgment of the trial court should be reversed, it is our view that the two statutes cannot be harmonized but rather are in irreconcilable conflict.

We reach this view for the following reasons. Section 12 outlines a list of advisements that parents must be given.[3] Subparagraph (8) is particularly instruc-

---

**3.** The statute specifically provides:

For purposes of sections 6 and 8 [I.C. §§ 31–35–1–6 and 31–35–1–8] of this chapter, the parents must be advised that:

(1) their consent is permanent and cannot be revoked or set aside unless it was obtained by fraud or duress or unless the parent is incompetent;

(2) when the court terminates the parent-child relationship:

(A) all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support pertaining to the relationship, are permanently terminated; and

(B) their consent to the child's adoption is not required;

(3) the parents have a right to the:

(A) care;

(B) custody; and

(C) control;

of their child as long as the parents fulfill their parental obligations;

(4) the parents have a right to a judicial determination of any alleged failure to fulfill their parental obligations in a proceeding to adjudicate their child a delinquent child or a child in need of services;

(5) the parents have a right to assistance in fulfilling their parental obligations after a court has determined that the parents are not doing so;

(6) proceedings to terminate the parent-child relationship against the will of the parents can be initiated only after:

(A) the child has been adjudicated a delinquent child or a child in need of services and removed from their custody following the adjudication; or

(B) a parent has been convicted and imprisoned for an offense listed in IC 31–35–3–4 (or has been convicted and imprisoned for an offense listed in IC 31–6–5–4.2(a) before its repeal), the child has been removed from the custody of the parents under a dispositional decree, and the child has been removed from the custody of the parents for six (6) months under a court order;

(7) the parents are entitled to representation by counsel, provided by the state if necessary, throughout any proceedings to terminate the parent-child relationship against the will of the parents; and

(8) the parents will receive notice of the hearing at which the court will decide if their consent was voluntary, and the parents may appear at the hearing and allege that the consent was not voluntary.

tive. First, by declaring, "the parents *will receive notice* of the hearing," subparagraph (8) strongly suggests that the foregoing advisements are to be given to parents out of court and in advance of any hearing.[4] Customarily this is done by DFC before the parent signs a written consent for voluntary termination. *Cf. In re M.S., B.G., & C.G.,* 551 N.E.2d 881, 882 (Ind.Ct.App.1990) (case in which attorney for parents presented couple with "Voluntary Relinquishment of Parental Rights" forms), *trans. denied.* Second, by declaring "the parents may appear at the hearing and allege that the consent was not voluntary" subparagraph (8) infers that should the parent appear in court and contest the written consent previously given, the only issue for the court to decide is whether the written consent was voluntary.

In stark contrast, by providing "parents must give their consent in open court" unless certain statutory prerequisites are met, Section 6 suggests that should the parent appear in open court, the parent need not contest the written consent as such. Rather, the parent need only take the stand and refuse to consent thereby revoking the previously given written consent. In essence, under the open court provision of Section 6, voluntariness is not an issue while at the same time voluntariness is the only relevant issue under Section 12. We see no way these two statutes can be reconciled. Thus, for guidance we turn to familiar tenets of statutory construction.

In construing a statute our main objective is to determine, give effect, and implement the intent of the legislature.

*Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 989 (Ind.1998). Where two or more statutes contradict each other or are in apparent conflict, we attempt to construe them in harmony. *Purcell v. State,* 721 N.E.2d 220, 223 (Ind.1999). However where, as here, there is an irreconcilable conflict between the statutes we will interpret the legislative intent to be that one statute must give way to another. *Wright v. Gettinger,* 428 N.E.2d 1212, 1219 (Ind.1981); *Fridono v. Chuman,* 747 N.E.2d 610, 617 (Ind.Ct.App.2001).

In determining whether the legislature intended that one statute should prevail over another, some cases emphasize that the more specific or detailed statute should prevail over the more general statute. *See, e.g., W. Clark Cmty. Sch. v. H.L.K.,* 690 N.E.2d 238, 241 (Ind.1997); *State v. Greenwood,* 665 N.E.2d 579, 583 (Ind. 1996); *Freeman v. State,* 658 N.E.2d 68, 70 (Ind.1995). Other cases emphasize that the most recent expression of the legislature shall prevail over the older one. *See, e.g., State ex rel. State Bd. of Tax Comm'rs v. Daviess Cir. Ct.,* 249 Ind. 580, 230 N.E.2d 761, 764 (1967); *Waldridge v. Futurex Indus. Inc.,* 714 N.E.2d 783, 785 (Ind.Ct.App.1999), *trans. denied; Borgman v. Aikens,* 681 N.E.2d 213, 219 (Ind. Ct.App.1997), *trans. denied.* This latter rule of construction is of little guidance to us here in that Section 6 and Section 12 were enacted at the same time. However concerning a more specific and detailed statute, we make the following observations. It is true that Section 12 is detailed and specific, *see supra* note 3, but only as to the *advisements* that parents are given in the first instance before signing a writ-

---

4. Indiana Code section 31–35–1–8 ("Section 8") provides: "Before consent can be given in court, the court must advise the parents of: (1) their constitutional and other legal rights; and (2) the consequences of their actions un-
der section 12 [I.C. § 31–35–1–12] of this chapter." The "consequences" here apparently refer to subparagraphs (1) through (3) of Section 12.

ten consent. On the critical question of the significant import of the consent, Section 6 provides that a parent must give her consent in open court unless the court makes several very specific findings, including the finding that the parent failed to appear in open court. This focus on the import of the open court consent, as contrasted with the advice a parent is given out of court before signing a consent form, persuades us that the legislature intended that Section 6 should prevail over Section 12.

This view is consistent also with the principle that the parents' interest in the care, custody, and control of their children is "perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). As our Court of Appeals has observed, the parent-child relationship is "one of the most valued relationships in our culture." *Tillotson v. Clay County Dep't of Family & Children*, 777 N.E.2d 741, 745 (Ind.Ct.App.2002), *trans. denied; In re Termination of the Parent–Child Relationship of D.L.M. & M.G.*, 725 N.E.2d 981, 983 (Ind.Ct.App. 2000).

DFC's insistence that a parent is forever bound by an out of court written consent appears to rest on a State interest of finality and predictability in the voluntary termination of parental rights. As DFC explains "the process of coming to open court after a consent to terminate parental rights, serves only the purpose of challenging a consent executed under coercion or duress, and not a simple change of heart." Pet. to Trans. at 9.

■ We acknowledge that the State's interests are powerful. However, we are faced here with two statutes that are in irreconcilable conflict. Absent a clear legislative directive that the State's interests outweigh the interests of parents, we must conclude that the Legislature intended that Section 6 prevail over Section 12. *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (declaring that the essential and basic constitutional rights of parents to the care, custody and control of their children warrant protection "absent a powerful countervailing interest."). We therefore agree with the holding of the Court of Appeals: "[A] parent's written consent to the voluntary termination of her parental rights is invalid unless she appears in open court to acknowledge her consent to the termination, or unless all three of the exceptions set out in Indiana Code Section 31–35–1–6(a) are satisfied." *Neal*, 768 N.E.2d at 490. Because Neal appeared in open court but did not consent to termination, the trial court erred in entering an order for the voluntary termination of Neal's parental rights.

### Conclusion

We reverse the judgment of the trial court. This cause is remanded for further proceedings.

SHEPARD, C.J., and DICKSON, J., concur.

SULLIVAN, J., dissents with separate opinion in which BOEHM, J., concurs.

SULLIVAN, Justice, dissenting.

I respectfully dissent. Justice Rucker's interpretation of the Legislature's intent is highly plausible and, indeed, essentially one to which I once subscribed when I concurred in Justice Dickson's dissent from the denial of transfer in *Ellis v. Catholic Charities*, 685 N.E.2d 476, 477 (Ind.1997) (Dickson, J., dissenting from the denial of transfer). However, I believe that the State's proffered interpretation of the Legislative intent is equally plausible

and the doctrines of stare decisis and legislative acquiescence warrant affirming the trial court's decision here, a decision that reflects established practice in Indiana juvenile courts.

The decision of the Court of Appeals in this case reflects the first time an Indiana appellate court has held that a parent has the automatic right to withdraw a prior voluntary consent to an adoption or to the termination of his or her parental rights. *Neal v. Termination of the Parent Child Relationship of M.N.*, 768 N.E.2d 485, 489 (Ind.Ct.App.2002). Compare *Rhodes v. Shirley*, 234 Ind. 587, 593, 129 N.E.2d 60 (Ind.1955) (adoption); *In re J.W.W.R.*, 712 N.E.2d 1081, 1085 (Ind.Ct.App.1999) (termination of parental rights); *Ellis v. Catholic Charities*, 681 N.E.2d 1145 (Ind.Ct. App.1997) (adoption), *transfer denied*, 685 N.E.2d 476; *In re Snyder*, 418 N.E.2d 1171, 1180 (1981), 1981 Ind.App. LEXIS 1515 (adoption and termination of parental rights). The Court of Appeals justified its departure from precedent at least in part on the fact that Justice Dickson and I had dissented in *Ellis* and Justice Rucker, as a member of the Court of Appeals, had dissented in *J.W.W.R.* However, precedent remains that a parent cannot set aside his or her consent "unless it was obtained by fraud or duress or unless the parent is incompetent." *J.W.W.R.*, 712 N.E.2d at 1085 (*quoting* Ind.Code § 31–35–1–12(1)). The Legislature has not changed this longstanding interpretation.

Indiana law is clear that a parent's consent to the termination of his or her parental rights must be voluntary and a parent who contends that a consent given was not voluntary has a statutory right to a hearing on that issue. The statute—if not the Constitution—mandates that this right is entitled to vigorous protection. But stare decisis and legislative acquiescence have long since established that a parent cannot set aside his or her consent unless it was obtained by fraud or duress or unless the parent is incompetent.

Over the years, authorities on Indiana juvenile court practice have also adopted this interpretation of statute and precedent. *See* Frances G. Hill & Derelle Watson–Duvall, *The CHINS Deskbook 2001*, ch. 10–4; Judicial conference of Indiana, *Juvenile Justice Benchbook*, § T–100 at 2–5 (1999); J. Eric Smithburn & Ann—Carol Nash, *Family Law—Children In Need of Services*, § 26.14 at 369–370 (West 2002). That is what Judge Cherry did in this case. I would affirm his decision.

BOEHM, J., concurs.