ATTORNEY FOR APPELLANT
Brent R. Dechert
Kokomo, Indiana

ATTORNEY FOR APPELLEE
Michael E. Boonstra
Kokomo, Indiana



## In the
## Indiana Supreme Court

No. 34S02-0904-JV-147

IN THE MATTER OF THE
TERMINATION OF THE
PARENT-CHILD RELATIONSHIP OF
M.B. AND S.B. (CHILDREN)

T.B. (MOTHER),

*Appellant (Defendant below)*,

v.

INDIANA DEPARTMENT OF CHILD SERVICES,

*Appellee (Plaintiff below)*.

---

Appeal from the Howard Circuit Court, No. 34C01-0703-JT-0009 and 34C01-0703-JT-0010
The Honorable Lynn Murray, Judge

---

On Petition to Transfer from the Indiana Court of Appeals, No. 34A02-0805-JV-437

---

**November 30, 2009**

**Sullivan, Justice.**

A mother seeks restoration of her parental rights, contending that she voluntarily agreed to the termination on the condition that she could continue visitation with her children, only to have visitation terminated at a subsequent hearing of which she received no notice or opportunity to be heard. Conditioning the voluntary termination of parental rights on continuing post-

adoption visitation irreconcilably conflicts with Indiana adoption law and is not permitted. On the facts of this case, the mother is entitled to a hearing on the termination of her visitation rights but not a full restoration of her parental rights.

## Background

T.B. ("Mother") gave birth to M.B. in March, 2000, and S.B., in June, 2002. The Howard County Department of Child Services ("State") removed both M.B. and S.B. ("Children") from Mother in August, 2002, because she had been arrested on drug charges and no suitable family members were available to care for the Children. Mother was released from incarceration in October, 2005. The State petitioned for the involuntary termination of Mother's parental rights on March 19, 2007. From the time of her release until March, 2007, Mother had not established suitable housing for her children, had not maintained stable employment, and had not complied with court orders regarding treatment for her drug problem. On April 9, 2007, the Howard Circuit Court held an initial hearing on the State's petition for involuntary termination of Mother's parental rights. Mother denied the allegations in the petition and the court set the matter for a fact-finding hearing on June 4, 2007.

Prior to the June 4 hearing, Mother, advised by her counsel, Brent R. Dechert, decided to execute a "Voluntary Relinquishment of Parental Rights" State Form 12587 for each of the Children. Attached to each form was an Addendum, drafted by Mr. Dechert, captioned "Post Adoption Privileges." The identical addenda (collectively, the "Addendum") contained a proviso stipulating that Mother's voluntary relinquishment of her parental rights and her consent to adoption were "subject to the Court granting post-adoption privileges and the adoptive parents consenting to post-adoption contact by and between themselves and [S.B.] and [M.B.] pursuant to I.C. 31-19-16-2."[1] (Appellant's App. 38, 106.)

---

[1] The precise language of the Addendum reads: "The parent, [T.B.] consents to voluntarily relinquish her parental rights and consent to adoption is subject to the Court granting post-adoption privileges and the adoptive parents consenting to post-adoption contact by and between themselves and [S.B.] and [M.B.] pursuant to I.C. 31-19-16-2." (Appellant's App. 38, 106.) As a matter of grammar, this is not a correct sentence. The parties contest the effect of the Addendum, but do not appear to contest the way it should be read. We have paraphrased it in the text to reflect the reading the parties appear to give it.

2

The voluntary termination forms (with Addendum attached) were submitted to the trial court at the commencement of the fact-finding hearing. The trial court reviewed the forms and advised Mother of the legal consequences of voluntary termination of parental rights. The court then confirmed that Mr. Dechert had fully consulted with Mother regarding her decision to terminate her parental rights voluntarily. The court then asked Mr. Dechert "how this reservation of post-adoption visitation rights [the Addendum] would work." (Tr. 11.) The following exchange took place:

> Mr. Dechert: We also discussed that if she voluntarily relinquishes her parental rights that she could be entitled to post-adoption contact if the department allowed that and, which the department did and I reviewed that with her and told her that that post-adoption contact would only continue so long as it is in the children's best interest and if at any point in time a court, either this court or another court, determine it is no longer in the children's best interest, she would not be entitled to further visitation and she indicated she understood that and continued to believe that this agreement and the voluntary relinquish of parental rights was in her best interest and the children's best interest.
>
> Trial Court: [Mother], you understand that by giving your consent to the termination of parent/child rights, you're giving up the rights of which I had advised you earlier and that it is subject to this reservation of post-adoption privileges which you understand, as Mr. Dechert's explained, to be subject to a court determining that it's in the child's best interest for such visitation or conduct to occur?
>
> [Mother]: Yes.

Id. at 12-13. The court had Mother reaffirm that she voluntarily decided to terminate her parental rights. Mr. Dechert then asked the State whether "at this point in time the department believes it is still in the children's best interest to continue with visitation[.]" Id. at 13. Case manager Scott Simmonds replied, "That's correct." Id. at 14.

At the conclusion of the hearing, the trial court accepted Mother's voluntary termination of her parental rights and accepted the post-adoption visitation Addendum. In doing so, the following exchange took place:

> Trial Court: Well, the court would make a finding today that [Mother] has acknowledged, having understood her rights in this matter, that she wishes to voluntarily relinquish her parent/child rights with regard to her children, [M.B.] and

> [S.B.], and that that is both freely and voluntarily made after consultation with her counsel, Mr. Dechert, and further, that according to the petition . . . the department does have a satisfactory plan for both the care and treatment of each child, and what would that be, Mr. –
>
> Case Manager Simmonds: That would be adoption, Your Honor.
>
> Trial Court: Therefore, the court would show that it would accept the Voluntary Relinquishment of Parental Rights as executed by [Mother], subject to the post-adoption privileges, as filed here today.

Id. The trial court issued an order later that day. The order "permanently terminated[]" all of Mother's "rights, powers, privileges, immunities, duties and obligations, including the right to consent to adoption," as they related to the Children. (Appellant's App. 40.)

After the termination hearing, there was a brief two-week period of confusion as to visitation rights. Initially, the State informed Mother that she had one "final visit" with her children. The "final visit" occurred, and on June 15, 2007, the Children were placed in a new home with prospective adoptive parents. Before the placement, the State had not notified the prospective adoptive parents of Mother's visitation privileges as provided in the Addendum. About a week after the placement, the State's case manager, Scott Simmonds, notified the prospective adoptive parents that Mother's visitation would resume.

From that time until September, 2007, Mother visited with the Children for two hours every two weeks. On September 10, 2007, a three-month CHINS periodic review hearing was held. Neither Mother nor her counsel was notified of the hearing. During the proceedings, the State's counsel, Rebecca Vent, recommended that Mother's visitation rights be terminated based on letters presented by the Children's therapists that opined "[visitation is] no longer in the children's best interest because it's impeding the bonding process with the adoptive family." (Tr. 21-22.) The trial court credited the therapists' opinions and ordered Mother's visitation privileges terminated. Two days later, on September 12, 2007, when Mother appeared for her regularly scheduled visitation, she was advised for the first time of the trial court's order terminating her visitation privileges. She was told that her visit with the Children that day would be her "good-bye visit." Mother has not visited with the Children since then.

4

On February 5, 2008, Mother filed a motion to set aside the trial court's initial order for voluntary termination of the parent-child relationship pursuant to Ind. Trial Rule 60(B). She argued that her voluntary termination should be set aside on three separate grounds.[2] A hearing on Mother's motion to set aside was held on February 28, 2008. The trial court entered an order denying the motion on April 14, 2008. Mother appealed, contending (1) that her voluntary termination of parental rights should be set aside because her consent to termination was based upon the State's and trial court's fraudulent misrepresentation that she would have continued visitation post termination; and (2) that the State violated her due process rights when it failed to notify her of the three-month periodic CHINS review hearing, at which her visitation privileges were terminated in her absence. The Court of Appeals affirmed the trial court's denial of Mother's motion to set aside her voluntary termination. In re Termination of the Parent-Child Relationship of M.B. and S.B., 896 N.E.2d 1, 15-16 (Ind. Ct. App. 2008).

Mother sought, and we granted, transfer, thereby vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).

## Discussion

We are presented with a situation in which Mother contends that she voluntarily agreed to the termination of her parental rights subject to continued and ongoing visitation with her children, only to have that visitation right terminated at a hearing of which she received no notice and no opportunity to be heard. She asks to restore the status quo ante such that all her parental rights would be restored and any termination proceedings would need to begin anew.

---

[2] The first ground was "for fraud and/or misrepresentation of the Department of Child Services as visitation has been terminated and the potential adoptive parents are apparently unwilling to allow post adoption privileges." (Appellant's App. 46.) The second ground was that the relinquishment "was not freely and voluntarily entered since [Mother] was induced to enter the agreement by the false promises of the Department of Child Services." Id. The third ground was that the relinquishment "imposed a contractual obligation upon the Court and the Department of Child Services to allow visitation with her children. The Court and the Department of Child Services has failed to abide by the terms of the contract and the contract should be deemed void and terminated." Id.

For the following reasons, set forth in detail below, we conclude that Mother is entitled to some relief but not a full restoration of her parental rights. When she voluntarily relinquished her parental rights, it was not subject to unconditional future visitation with her children but only visitation so long as it was in the Children's best interests. As such, she knew and agreed that visitation might be terminated in the future. On the other hand, due process demanded that she be given notice and the opportunity to be heard before visitation was terminated.

# I

Voluntary termination of parental rights severs all legal ties, including visitation rights, between parents and their children.[3] Indiana's "open adoption statutes" (I.C. §§ 31-19-16-1 & 2), however, provide parents the opportunity to obtain post-adoption visitation privileges under certain circumstances. Indiana Code § 31-19-16-1 states in relevant part: "At the time an adoption decree is entered, the court entering the adoption decree may grant postadoption contact privileges under section 2 of this chapter to a birth parent who has[] . . . voluntarily terminated the parent-child relationship." Id. (emphases added). The phrase "section 2 of this chapter" refers to I.C. § 31-19-16-2, which delineates the procedures that must be followed before a court may grant post-adoption contact privileges to a birth parent who has voluntarily terminated parental rights. Indiana Code § 31-19-16-2 states:

> A court may grant postadoption privileges if:
> (1) the court determines that the best interests of the child would be served by granting postadoption contact privileges;
> (2) the child is at least two (2) years of age and the court finds that there is a significant emotional attachment between the child and the birth parent;

---

[3] When parents consent to voluntary termination and the court terminates the parent-child relationship, "all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, parenting time, or support pertaining to the relationship, are permanently terminated; and . . . [the parents'] consent to the child's adoption is not required[.]" I.C. §§ 31-35-1-12(2)(A) & (B). In 2005, this section was amended by substituting "parenting time" for "visitation" in subsection (2)(A). See Pub. L. No. 68-2005, § 56.

> (3)     each adoptive parent consents to the granting of postadoption contact privileges;
>
> (4)     the adoptive parents and the birth parents:
> > (A)     execute a postadoption contact agreement; and
> > (B)     file the agreement with the court;
>
> (5)     the licensed child placing agency sponsoring the adoption and the child's court appointed special advocate or guardian ad litem appointed under IC 31-32-3 recommends to the court the postadoption contact agreement, or if there is no licensed child placing agency sponsoring the adoption, the county office of family and children or other agency that prepared an adoption report under IC 31-19-8-5 is informed of the contents of the postadoption contact agreement and comments on the agreement in the agency's report to the court;
>
> (6)     consent to postadoption contact is obtained from the child if the child is at least twelve (12) years of age; and
>
> (7)     the postadoption contact agreement is approved by the court.

Id. (emphases added).

The "Post Adoption Privileges" Addendum in this case explicitly references I.C. § 31-19-16-2. It provides that Mother's consent to relinquish her parental rights voluntarily and her consent to adoption were "subject to the Court granting post-adoption privileges and the adoptive parents consenting to post-adoption contact by and between themselves and [M.B.] and [S.B.] pursuant to I.C. 31-19-16-2."[4] (Appellant's App. 38, 106.) Mother contends that there is Court of Appeals precedent "holding that post-adoption contact privileges may be stipulated to and contemplated in the future." (Appellant's Br. 17.) She noted that "the Addendum would require the [State] to find adoptive parents willing to allow [Mother] post adoption contact." (Appellant's Pet. to Transf. 5.)

We find that the Addendum's reservation of post-adoption contact privileges is irreconcilably inconsistent with Indiana's open adoption statutes. See I.C. §§ 31-19-16-1 & 2. We agree with the following analysis by the Court of Appeals:

---

[4] See supra text accompanying note 1.

Indiana Code Section 31-19-16-1 provides that a court entering an adoption decree may grant post-adoption contact privileges under Indiana Code Section 31-19-16-2 to a birth parent who has previously voluntarily relinquished his or her parental rights "at the time an adoption decree is entered[,]" and not, as Mother would have us do, prior to, or as a condition precedent to, a parent's voluntary consent to termination. . . . Indiana Code Section 31-19-16-2 requires several pre-conditions to be met before post-adoption visitation may be granted[.] . . . Such conditions can never be satisfied at the time of termination because adoption cannot occur until after the termination of all parental rights of the natural parent.

In re M.B. and S.B., 896 N.E.2d at 7.

The Addendum impermissibly overrides the authority of an adoption court provided by I.C. § 31-19-16-2. It requires that "the Court grant[] post-adoption privileges and the adoptive parents consent[] to post-adoption contact[.]" (Appellant's App. 38, 106.) This stipulation removes an adoption court's statutory authority to grant post-adoption contact privileges if it finds that (1) contact would be in the "best interests of the child[,]" I.C. § 31-19-16-2(1); and (2) if the child is two years of age or older, "that there is a significant emotional attachment between the child and the birth parent[,]" id. § 2(2). It also overrides the adoptive parents' statutory right to consent to post-adoption contact privileges, see id. § 2(3), and the joint responsibility of the consenting adoptive parents and the birth parents to execute a post-adoption contact agreement and file the agreement with the court, id. § 2(4). Finally, the Addendum does away with an adoption court's statutory authority to give final approval to the parties' agreement. See id. § 2(7).

We hold that, unless all of the provisions of Indiana's open adoption statutes (I.C. §§ 31-19-16-1 & 2) are satisfied, the voluntary termination of parental rights may not be conditioned upon post-adoption contact privileges.

**II**

The Court of Appeals treated Mother's voluntary termination form and the Addendum as a contract. In re M.B. and S.B., 896 N.E.2d at 6.[5] It held that the Addendum, reserving post-

---

[5] "[B]ecause voluntary consent forms are contracts, the principles of contract law can provide guidance under the facts of this case." Id. at 7.

adoption visitation privileges, contravened both Indiana statutory law and public policy and was "void ab initio and thus unenforceable as a matter of law." Id. at 8. It next considered "whether such a decision renders the entire voluntary consent contract void." Id. The court concluded that "severing the addendum does not frustrate the basic purpose of the remainder of the agreement[,]" which it defined as Mother's voluntary consent to the termination of her parental rights. Id. at 8-9. It therefore held that "[t]he remaining consent form is . . . enforceable by the trial court." Id. at 9.

We agree with the Court of Appeals that the visitation proviso contained in the Addendum was invalid as a matter of Indiana law, see supra Part I. We decline to analyze this as a matter of contract law, however, and instead conclude that the Addendum should be honored after taking into account the following three factors.

First, the State accepted the post-adoption visitation proviso at the termination proceeding without objection. Mr. Dechert, Mother's attorney, asked the State whether "at this point in time the department believes it is still in the children's best interest to continue with visitation[.]" (Tr. 13.) Case Manager Scott Simmonds replied, "That's correct." Id. at 14. After the proceeding, the State confirmed its acceptance of the Addendum by facilitating Mother's bi-weekly supervised visitation with the Children for three months.

Second, the trial court expressly conditioned the voluntary termination on the post-adoption visitation privileges outlined in the Addendum. During the proceeding, the court asked Mother, "you understand that by giving your consent to the termination of parent/child rights[] . . . it is subject to this reservation of post-adoption privileges . . . ?" Id. at 12-13. Mother replied, "Yes." Id. at 13. At the close of the proceedings, the trial court concluded that "the court would show that it would accept the Voluntary Relinquishment of Parental Rights as executed by [Mother], subject to the post-adoption privileges, as filed here today." Id. at 14.

Third, while the Addendum impermissibly interferes with the open adoption statutes' grants of authority to adoption courts and of consent rights to adoptive parents, the colloquy be-

9

tween the trial court, Mother, and her counsel clearly indicates that the parties understood that any post-adoption visitation was not unconditional. At the commencement of the termination proceeding, Mother's attorney informed the court that "I . . . told [Mother] that that post-adoption contact would only continue so long as it is in the children's best interest and if at any point in time a court, either this court or another court, determine it is no longer in the children's best interest, she would not be entitled to further visitation[.]" Id. at 12. The court then granted Mother visitation rights subject to "a court determining that it's in the child's best interest for such visitation . . . to occur[.]" Id. at 13.

Given these three factors – that the State voiced no objection to the visitation proviso and acknowledged and complied with it; the trial court's colloquy with Mother expressly referenced the visitation proviso; and the visitation proviso was not unconditional – it would be inequitable and unjust to hold that Mother's voluntary relinquishment of her parental rights was not subject to ongoing but conditional visitation rights. We hold, on the facts of this case, that Mother's parental rights were terminated as provided in I.C. §§ 31-35-1-12(2)(A) & (B) except that that she had the right to ongoing periodic visitation with the Children unless and until a court were to determine that such visitation was no longer in the children's best interest. If a court were to make such a determination, she would not be entitled to further visitation.

### III

As described under Background, following the termination hearing, the State facilitated Mother's supervised visitations with the Children on a bi-weekly basis for about three months. Then, on September 10, 2007, at a review hearing, the State requested, and the trial court agreed, to terminate Mother's visitation rights. Neither Mother nor her counsel were notified of the hearing and therefore had no opportunity to be heard prior to the termination of her visitation rights. She had a final visit with the Children on September 12, 2007.

Mother contends that "due process would require notice and the opportunity to be heard from the person they seek to void or modify the post-adoption contact with." (Appellant's Br. 20.) The State counters that Mother was "not entitled to notice of the periodic case review hear-

10

ing on September 10, 2007[]" because she was "no longer a party to the CHINS case" as a result of the trial court's order terminating her parental rights. (Appellee's Br. at 12.)

Indiana Code § 31-34-21-4, which governs periodic CHINS review hearings, provides that "at least seven (7) days before the periodic case review[] . . . the department [of child services] shall provide notice of the review to . . . (1) The child's parent, guardian, or custodian." I.C. § 31-34-21-4(a)(1) (emphasis added).[6] The department "shall present proof of service of the notice . . . at the periodic case review." Id. § 4(b). Furthermore, I.C. § 31-34-2-1(d) provides that in periodic CHINS review hearings, the court "shall provide [parents, guardians, and custodians, inter alia] an opportunity to be heard and to make any recommendations to the court[.]" (emphasis added). This includes the "the right . . . to submit a written statement to the court" and "the right to present oral testimony to the court and cross examine any of the witnesses at the hearing." Id. § (d)(1)-(2).

We acknowledge the State's position that these provisions are not applicable to a parent whose parental rights have been completely and irrevocably terminated. But based on the conclusion that we reached in Part II, that simply is not Mother's situation. She did maintain ongoing visitation rights and we hold that she was entitled to the relevant statutory protections. And given what transpired at the review hearing, we are unable to say that the failure to accord her those protections was harmless.

At the review hearing, the State was represented by counsel, Ms. Rebecca Vent. The State's case manager, Ms. Lee, also made an appearance. After reviewing written reports submitted by Ms. Lee and Ms. Pierson (the CASA), the court raised the issue of "whether or not the visits were in the children's best interest." (Tr. at 21.) Ms. Vent replied:

> Well, Judge, based upon the letters presented by both of the therapists for the children, they both are of the opinion that it's no longer in the children's best interest because it's impeding the bonding process with the adoptive family. There's a difference between their opinions in that one of the therapists believes

---

[6] The only exception from this seven day notice requirement is "[i]f the parent of an abandoned child does not disclose the parent's name[.]" I.C. § 31-34-21-4(f), quoted in I.C. § 31-34-21-4(a).

> there should be a phased-out visitation over the course of three separate visitations. The other one is of the opinion that just an immediate termination of the visitations would better suit the child. So I suppose the department is asking for the termination of the visitation as to both children immediately because one therapist recommends the immediate termination, [and] the other says phase it out, but it would be difficult to separate the two children, one goes for visitation and one doesn't, so we were hopeful that the court would just grant our recommendation that visitations be terminated.

Id. at 21-22 (emphases added). Given that the State itself indicated that the therapist for one of the Children did not think that visitation rights should be immediately terminated, we cannot say that Mother would not have been able to present evidence that termination would not be in the Children's best interest.[7]

Having found that Mother's voluntary relinquishment of her parental rights was subject to conditional visitation rights, Mother further maintains that because her rights to notice and an opportunity to be heard at the hearing terminating her visitation rights were violated, the earlier termination of her parental rights should also be vacated. We hold that her parental rights remain terminated and that she is entitled to no relief in that regard. She consented to the termination in a proceeding that appears to us to have accorded with all relevant law, save the visitation proviso. While she retains an enforceable right as to the visitation proviso, this does not create any basis for reopening the termination of parental rights proceeding.

**Conclusion**

Having previously granted transfer, we affirm the trial court's acceptance of Mother's voluntary termination of her parental rights to the Children. We reverse the trial court's decision to terminate Mother's visitation rights at the three month CHINS review hearing[8] and remand this case to the trial court with instructions that should the State continue to seek termination of

---

[7] Holding as we do that the statute covers Mother's situation, it is not necessary for us to address her claim that terminating her visitation rights without notice or opportunity to be heard violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

[8] There is no entry of judgment in the record terminating Mother's visitation rights. The court's decision to terminate visitation rights was announced orally at the review hearing.

Mother's visitation rights, the court consider the request at a hearing that accords with the requirements discussed in this opinion.

Shepard, C.J., and Dickson and Rucker, JJ., concur.

Boehm, J., concurs in result with separate opinion.

**Boehm, Justice, concurring in result.**

I concur in Part III of the majority opinion. I agree with the result reached by the majority in Parts I and II, but I do not agree that a consent with an invalid condition is nonetheless a consent. I would, as the majority puts it, resolve Mother's claim as a matter of contract. Mother consented to termination, but attached an addendum containing a written condition—on its face a perpetual unchallengeable right to visitation—that violated several statutory provisions. A consent with an unacceptable condition is no consent at all. See 17A C.J.S. Contracts § 297 (1999) ("If striking the illegal portion defeats the primary purpose of the contract, a court must deem the entire contract unenforceable."). A court may void the invalid condition only "if the parties would have entered the bargain absent the illegal portion of the original agreement." Lee v. State, 816 N.E.2d 35, 39 (Ind. 2004) (quoting 17A C.J.S. Contracts § 297). Here, the majority concludes that voiding the addendum does not also void Mother's original consent. I disagree. Mother testified that she would not have voluntarily relinquished her parental rights without the addendum. I do not find her earlier statement that she thought her rights would "be terminated anyway" to be inconsistent with her claim that she would have contested termination without the addendum.

Mother's consent was not required for the court to terminate her parental rights. If the invalid consent were the end of the story, we would be left with trying to figure out what would have happened if Mother had contested termination and what should be done about an invalid consent in light of two years of intervening experience and adoptions on the assumption by all parties that Mother's parental rights had been terminated. But at the termination hearing, Mother explicitly consented to a termination and, contrary to her written submission, unequivocally agreed to subject her visitation rights to future reconsideration. What is said in "open court" controls over pre-hearing documents. Neal v. DeKalb County Div. of Family and Children, 796 N.E.2d 280, 285 (Ind. 2003) (holding that a mother's written consent to termination of parental rights was invalid when she later revoked her consent in open court). Having given her consent in open court Mother is estopped from challenging the court's right to revisit and adjust or eliminate her visitation. In short, I do not agree that Mother's written consent is enforceable, but in

1

this case she clearly waived any right to assert a bulletproof right to visitation, and the termination is no longer open to question.