## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 05 2017, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Joann M. Price<br>Merrillville, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Abigail R. Recker<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of D.S. (Minor Child):<br><br>A.S. (Father),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | May 5, 2017<br><br>Court of Appeals Case No. 45A03-1611-JT-2573<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Thomas P. Stefaniak, Jr., Judge<br><br>Trial Court Cause No. 45D06-1508-JT-201 |

**Baker, Judge.**

[1]    A.S. (Father) appeals the termination of his relationship with his child, D.S. (Child). Father argues that there is insufficient evidence supporting the termination. Finding the evidence sufficient, we affirm.

## Facts

[2]    Child was born in November 2011 and A.A., her half-sister (Sister),[1] was born in July 2013. In November 2013, the Department of Child Services (DCS) began investigating allegations related to the children. DCS learned that a caregiver (Caregiver) had been caring for Child for approximately two years and for Sister since her birth. Mother and paternal grandmother had agreed, with Father's knowledge, that the children should be placed in Caregiver's care.

[3]    On November 23, 2013, DCS removed both children from Caregiver's home and placed them in foster care. At that time, Child was withdrawn and non-verbal, she had sores on her head and was missing patches of hair, and was dirty. Father admitted that Child was a Child in Need of Services (CHINS) on March 31, 2014. The trial court ordered Father to participate in certain services, including a parenting assessment, an initial clinical assessment, and regular supervised visitation with Child.

[4]    Of concern in this case is Child's special needs. She has been diagnosed with a mild developmental disability and is at least two years delayed in her

---

[1] Father is not Sister's father. In a separate consolidated appeal, Mother and Sister's father appeal the termination of their parental rights.

development. After she was removed from Caregiver, she did not speak for six months, hoarded food, and cried at the end of meals. She has participated in multiple services, including occupational and speech therapy. Child has progressed—her speech has improved and her hair is growing back—but she has ongoing developmental delays and will continue to receive special needs services. It is important that Child attend all of her appointments.

[5] Father completed a number of assessments and participated in homebased therapy. In February 2015, Father began participating in individual therapy with clinical therapist Audrey Gaines. He worked with Gaines for over a year. At the termination hearing, Gaines testified that there are several barriers preventing Father from being an appropriate parent: (1) he does not have full-time employment; (2) he does not have a big enough home that is suitable for raising a child; and (3) he does not have good decision-making skills. Tr. p. 36-37. Gaines also stated that Father needs to work on "making rational decisions and as an adult calming down, not being quick to explode when things occur." *Id.* at 38. At the time of the termination hearing, Gaines did not believe that Father was in any position to parent his child because he was not "in a stable place" with "a sound mind[.]" *Id.* Gaines also did not believe that Father had the consistency and discipline to ensure that Child went to all of her appointments. In Gaines's opinion, Father is "incapable" of maintaining the stability that would be necessary to be an appropriate parent. *Id.* at 42.

[6] In addition to his therapy sessions with Gaines, Father had supervised visitation with Child on Saturdays. Father, however, was inconsistent in his

participation, missing approximately 40% of the visits. He frequently cancelled at the last minute. His reasons for cancellation included lack of transportation, being too tired, and having other obligations. The visitation supervisor expressed concerns about a lack of interaction between Father and Child at the visits. In visitation reports from March, April, and May 2016, the visitation supervisor reported as follows:

> [Father] needs to focus more on his one on one interaction with [Child]. [She] observed [Father] being distracted with interacting with other people in the mall, spending excessive amounts of time texting on his phone, talking to the provider about how he can't wait for the case to be over, and fails to interact with [Child] and she doesn't talk much during visitations. [She] also reported during a visit, [Father] purchased a cell phone case at the mall but at lunch time, [Father] stated he did not have enough money and the visitation facilitator purchased the meal for [Child]. On the most recent visitation report on 5/21/16, [Father] was observed not to acknowledge [Child's] presence at the arrival to the car at pickup. [Father] appeared to have an attitude about coming to the visit and miss going to work. During the lunch [Father] failed to interact with [Child] and was redirected to engage [Child] into conversation. [She] noted it appears [Father] is content with talking with others around him and often fails to interact as much as needed with [Child] during community visits. [She] notated [Father] called to cancel his visitation at least twice before coming to the 5/21/16 visit. It appears that [Father] is looking for excuses to not attend and has to be encouraged to come to visits by the visitation facilitator. . . .

DCS Ex. V p. 6. He also used Child during community visits to "pursue women." Tr. p. 148-49. Father never made sufficient progress to be able to transition to unsupervised visits with Child.

On August 26, 2015, DCS filed a petition to terminate Father's parental rights. At the time of the October 12, 2016, termination hearing, Father was employed part-time as a school bus aide. He lived in a one-bedroom apartment in Chicago, which Gaines observed in person and later testified was not big enough to house both Father and Child. Father relied on public transportation and admitted that he was unable to provide Child transportation to and from her appointments. On October 18, 2016, the trial court granted the termination petition, finding, in relevant part, as follows:

> [Father] does not have independent stable housing or adequate employment. [Father] has struggled with stability throughout this case, over the past three years and still is in no position to be able to take care of his child. [Father] was not consistent with his visitations with his child. [Father] has missed approximately forty percent of the visits offered. [Father] indicated that he would miss visits due to working and that working was more important that [sic] visiting the child. [Father] was not engaging with the child when he would visit. [Father] testified that he would be unable to transport his child to her various doctor appointments for her specialized needs due to having no transportation. [Father] relies on others and public transportation for his travel needs. Father testified that he would be unable to care for his child's special needs. [Father] has received services for three years and is no closer to reunification with his child.
>
> ***
>
> The children are special needs children and require constant care and supervision and have numerous appointments with various providers. The children's needs are all being met in their current placement. The children are thriving in their placement and

[have] made a lot of progress while in the care of the foster parent. None of the parents have the ability to meet the special needs of the children.

*\*\**

. . . The Court notes no parent . . . has been able to obtain stability over the past three years. The Court must consider the children's well-being. It is unlikely that any parent will be in a position to properly parent these children in the near future. The children have been in the same placement for the last three years and it is the only home that they know. To remove the children would be detrimental to the children's well-being. . . .

Appellant's App. Vol. II p. 2-4. Child's foster mother plans to adopt her if the termination is finalized. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[8]     Father argues that there is insufficient evidence supporting the trial court's termination order. Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not

set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[9] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

      (B)     that one (1) of the following is true:

            (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

            (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

            (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

      (C)     that termination is in the best interests of the child; and

      (D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

# II. Evidence

Father argues that the evidence does not establish that (1) there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied; (2) the continuation of the parent-child relationship poses a threat to Child's well-being; (3) termination is in Child's best interest; or (4) that DCS has a satisfactory post-termination plan in place for Child.

# A. Conditions Resulting in Removal

As noted above, one of the ways to support a termination petition is for DCS to prove by clear and convincing evidence that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parent will not be remedied. Here, Child was initially removed because, with Father's knowledge, Mother had placed her in the care of Caregiver. At the time of her removal, Child was non-verbal, was dirty, and had sores on her head and patches of missing hair. Throughout the CHINS and termination cases, Child has continued to be removed because of service providers' concerns about Father's stability (including employment and housing), his behavior during visits, and his ability to meet all of Child's special needs.

The trial court found that at the time of the termination hearing, Father did not have independent stable housing or adequate employment. Father notes that he did, in fact, have both housing and employment at that time. That is correct, but his therapist testified that to be a safe and appropriate caregiver for Child, Father needed to find full-time employment and housing that would have room for Child. Despite having three years of service providers in place to help him achieve sufficient stability to care for Child, Father had not achieved that stability by the time of the termination hearing. It is certainly the case that the mere fact that a parent has insufficient income would not, on its own, be sufficient to support a termination order. Here, however, it is just one fact among many supporting the trial court's order.

[13]     Similarly, Father's lack of transportation would not, in and of itself, be sufficient to support a termination order. Here, however, transportation is particularly important given Child's special needs and her frequent appointments with service providers to meet those needs. Father testified that "I can't provide transportation, getting her to appointments and stuff like that." Tr. p. 102. Again, Father has had three years to achieve sufficient stability to meet Child's needs, but has not yet managed to do so.

[14]     While Father did participate in services throughout the CHINS case, he did not benefit from those services. *See In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005) (affirming termination order where parent participated in services but failed to benefit from those services). Here, the record reveals that, despite participating in multiple services for three years, Father failed to progress to a point where he could be a safe parent:

- Father missed approximately 40% of his visits with Child.
- During the visits he did attend, Father did not fully engage with Child.
- Father never progressed to unsupervised visits or overnight visits.
- Father did not have a full-time job.
- Father did not have a house that was suitable for Child.
- Father was unable to transport Child to her many appointments.
- Father did not have the discipline to ensure Child attended her appointments.

In short, Father was in no position to parent Child at the time of the termination hearing. Tr. p. 38-39. He came close to admitting that at the termination hearing, saying, "[a] little bit, I feel like I can [parent her]. And [] a little bit, I feel like I can't." *Id.* at 102.

Father has had three years to become an appropriate parent. He has not managed to do so. He admitted that it was unfair to ask Child to wait for a permanent home until he got to a point in his life when he could meet all her needs. *Id.* at 105. Indeed, we do not require children to "wait indefinitely for their parents to work toward preservation or reunification." *In re E.M.*, 4 N.E.3d 636, 648 (Ind. 2014). Here, we find that the evidence supports the trial court's conclusion that DCS established by clear and convincing evidence that there is a reasonable probability that the conditions resulting in Child's original and continued removal from Father will not be remedied.

## B. Threat to Child's Well-Being

Next, Father argues that DCS failed to prove by clear and convincing evidence that continuation of the parent-child relationship poses a threat to Child's well-being. With respect to this statutory element, the trial court "need not wait until a child is irreversibly influenced by a deficient lifestyle such that her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). Instead, "[w]hen the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate." *Id.*

Here, the record shows that Father knew that Child was in the care of Caregiver. At the time of Child's initial removal, she was non-verbal and had significant developmental delays. She did not speak for six months following

removal and hoarded food, crying when mealtime was over. Since her removal, placement in foster care, and participation with services, Child has progressed and is thriving.

[18] At the time of the termination hearing, even though Child had made progress, she still needed significant special needs services. Father admitted he was unable to transport Child to her appointments. The Family Case Manager (FCM) testified that Father was unable to care for Child's special needs. Gaines testified that she did not believe Father had sufficient discipline to ensure Child attended all of her appointments. If Child were placed in Father's care, her physical and emotional development would be threatened. Under these circumstances, we find that the record supports the trial court's conclusion that DCS proved by clear and convincing evidence that continuation of the parent-child relationship posed a threat to Child's well-being.

## C. Best Interests

[19] Father next argues that there is insufficient evidence supporting the trial court's conclusion that termination of the parent-child relationship is in Child's best interests. In considering this element, we must consider the totality of the evidence, subordinating the interests of the parent to that of the child involved. *In re A.K.*, 924 N.E.2d 212 (Ind. Ct. App. 2010); *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[20] Here, despite having had three years to better his situation, at the time of the termination hearing, Father did not have full-time employment, suitable

housing, or the ability to transport Child to her appointments. The FCM and Gaines both testified that they did not believe Father would be able to care for a child with special needs. Father even admitted that, at the time of the termination hearing, it was in Child's best interests to remain placed with her foster mother.

[21] Child had been removed from Father for virtually all of her life. While he did visit with her and they developed a relationship, he missed nearly 40% of those visits. And when he did attend the visits, the supervisor had concerns about the lack of interaction between Father and Child.

[22] Father argues that termination is not in Child's best interests because there is no guarantee that Child's foster mother will allow post-adoption contact between Father and Child. But post-adoption contact is a matter reserved for the adoption court and is not a factor when determining whether termination is in a Child's best interests. Ind. Code § 31-19-16-2; *cf. In re M.B.*, 921 N.E.2d 494, 500 (Ind. 2009) (holding that unless all provisions of the open adoption statutes are satisfied, "the voluntary termination of parental rights may not be conditioned upon post-adoption contact privileges"). And as noted by the State, Father did not even take advantage of all of his visits or of the additional contact offered by foster mother during the CHINS case.[2] We do not find this to be a compelling argument, and we find the evidence sufficient to support the

---

[2] Foster mother invited Father to Child's birthday parties, but Father failed to attend.

trial court's conclusion that DCS proved by clear and convincing evidence that termination of the parent-child relationship is in Child's best interests.

# D. Satisfactory Plan

[23] Finally, Father challenges the trial court's conclusion that DCS has a satisfactory plan for the care and treatment of Child following termination. He essentially repeats his argument that the plan of adoption is unsatisfactory because foster mother has the option to deny post-adoption contact. As noted above, however, post-adoption contact is a matter for the adoption court, not the termination court, to consider. I.C. § 31-19-16-2.

[24] DCS's plan is adoption. Adoption is a satisfactory plan. *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). And although DCS is not required to identify a specific family in place to adopt the child, in this case, it has. The record reveals that Child has been placed with foster mother for three years, has thrived in her care, and is bonded to her. The evidence readily supports the trial court's conclusion that DCS has a satisfactory plan for Child's care and treatment.

[25] The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.