**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 10 2013, 8:49 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRENT C. VIAN**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES:

**MITCH GERBER**
DCS Local Office in Allen County
Fort Wayne, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.M.K. and A.O.K., minor children, and T.D., biological father, | ) ) ) ) |
| T.D., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )   No. 02A03-1210-JT-452 |
| | ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause Nos. 02D08-1004-JT-191 & 02-DO8-1007-JT-287

**June 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

T.D. ("Father") appeals from the juvenile court's order denying his motion to withdraw his voluntary consent to the termination of his parental rights to his children, A.M.K. and A.O.K. In so doing, Father contends that the juvenile court's denial is clearly erroneous because Father alleges his consent was not given knowingly and voluntarily, and that his relinquishment of his parental rights was procured by fraud, undue influence, duress, or other factors.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts pertinent to the issues presented in this appeal follow. Father and T.K. ("Mother")[1] are the biological parents of A.M.K., born on February 4, 2008, and A.O.K., born on June 23, 2009. During the initial period of the underlying child in need of services ("CHINS") case involving A.M.K., Father was on the run because he had outstanding warrants for his arrest due to a probation violation. Father was arrested in April of 2009 and remained incarcerated. At some point, Father was released from incarceration, and Mother and Father conceived A.O.K. By the time of A.O.K.'s birth, Father was incarcerated for burglary charges filed against him. Father's earliest release date was in January 2016.

During the course of the CHINS proceedings involving both children, Father proposed that his mother, E.B. ("Paternal Grandmother"), should obtain custody of the children. Paternal Grandmother was a resident of Alabama, but had come to Fort Wayne, Indiana to

---

[1] Although the actual documents are not before us, the record reflects that Mother consented to the termination of her parental rights to A.M.K. and A.O.K., but does not participate in this appeal. Consequently, we limit our recitation of the facts to those pertinent solely to Father's appeal. We note, however, that pursuant to Indiana Appellate Rule 17(A) a party of record in the trial court shall be a party on appeal.

visit with and attempt to take custody of A.M.K. and A.O.K. Father, through his counsel, submitted a proposed permanency plan for placement of the children with Paternal Grandmother. The local department of child services ("DCS") and the children's guardian ad litem ("GAL") submitted briefs to the juvenile court on the propriety of Father's proposed permanency plan. On January 4, 2011, the juvenile court approved a permanency plan calling for a termination of parental rights and adoption, but did not approve placement with Paternal Grandmother.

The termination hearing was held on January 5, 2011. Father appeared telephonically because he was incarcerated in the Allen County Jail, and his counsel appeared in person.. DCS had initially brought the proceedings via a petition for the involuntary termination of Father's parental rights to the children. At the hearing, Father's counsel informed the juvenile court that Father had decided to voluntarily relinquish his parental rights to A.M.K. and A.O.K. DCS then moved to convert the petition to a voluntary termination of parental rights, and that motion was granted.

At the hearing, Father's counsel noted the juvenile court's entry of the order approving a permanency plan calling for the termination of parental rights and adoption of the children. Father, who had been arrested and was incarcerated, had the opportunity to discuss with his counsel the impact of Father's recent arrest on the pending matters involving the children, the juvenile court's rulings in the CHINS cases, and what had transpired in the contested termination proceedings. Father's counsel further indicated to the juvenile court that he had met with Father prior to the hearing in order to review the relinquishment forms,

3

which Father had read and counsel had read over with Father, and had given Father the opportunity to ask questions about the forms. Father signed the relinquishment forms approximately an hour prior to the termination hearing, and the forms were submitted to and admitted by the juvenile court in the proceedings.

The juvenile court placed Father under oath, and Father was questioned by counsel about the relinquishment of his rights. Father testified that he had met with counsel that morning to review and discuss the forms, which Father stated he signed freely and voluntarily. Upon questioning by the juvenile court, Father acknowledged that he read and understood the English language and was not under the influence of any drugs or substances that would alter or impair his ability to understand the proceedings. Father also indicated that he understood the permanency of his consent and that it could not be revoked or set aside unless it was obtained by fraud, duress, or he was found to be incompetent. The juvenile court then accepted Father's relinquishment of rights forms and stated the intention to enter orders showing that Father's parental rights to A.M.K. and A.O.K. were voluntarily terminated. The juvenile court's order to that effect was entered on March 18, 2011.

On December 5, 2011, Father filed three copies of a document entitled "Affidavit" with the juvenile court in which Father stated that he had signed the relinquishment forms by mistake. The juvenile court treated Father's document as a motion to revoke Father's consents and held a hearing on the motion on September 17, 2012. Father appeared with counsel and testified in support of his motion that he had met with his counsel for approximately five minutes prior to the January 5, 2011 hearing, and his counsel advised him

4

that his only option was to sign over his parental rights to A.M.K. and A.O.K. Father stated that his counsel told him that Paternal Grandmother was no longer interested in custody of the children and was packing to return home to Alabama. He did not get a chance to speak with her prior to January 5, 2011.

While Father recognized the relinquishment forms he had signed and that his rights to the children would be terminated, he did not ask what would happen to his children after the juvenile court took the forms under consideration. He claimed that he did not understand the implication of signing the forms, but thought that by signing the forms Paternal Grandmother would somehow get the rights to his children. Father further testified that he did not have an expectation of who would get custody of the children, but thought that Paternal Grandmother would be next in line. He claimed that neither the magistrate nor his counsel informed him that someone other than Paternal Grandmother could adopt the children. Father claimed that he would not have signed the relinquishment forms had he known what would happen and that he wanted the children to stay in his family. He added that at the time he executed the forms, he was under a great deal of stress.

The juvenile court took judicial notice of the underlying CHINS and termination proceedings and took the matter under advisement at the conclusion of the hearing. On September 28, 2012, the juvenile court entered its order denying Father's request to withdraw his voluntary relinquishment of parental rights to A.M.K. and A.O.K. Father now appeals.

**DISCUSSION AND DECISION**

Father contests the juvenile court's order denying his motion to withdraw his

5

voluntary consent to the termination of his parental rights to his children, A.M.K. and A.O.K., claiming that he had signed the forms under the mistaken belief Paternal Grandmother would be able to adopt the children. The juvenile court treated Father's request as a motion for relief from judgment under Indiana Trial Rule 60(B)(1). "Our review of the grant or denial of an Ind. Trial Rule 60(B) motion is limited to whether the trial court abused its discretion." *In Re Paternity of K.M.*, 651 N.E.2d 271, 274 (Ind. Ct. App. 1995). A trial court abuses its discretion when its judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.*

The juvenile court entered findings of fact and conclusions thereon in denying Father's motion. Father does not challenge any of the juvenile court's findings. Upon review of a case in which a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless they are clearly erroneous. *In re C.S.*, 863 N.E.2d 413, 417 (Ind. Ct. App. 2007) *abrogated on other grounds by In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). We first consider whether the evidence supports the trial court's findings and then whether the findings support the judgment. *Id.* Findings are clearly erroneous only in circumstances where a review of the record leaves us firmly convinced that a mistake has been made. *Id.* The trial court's judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* When conducting our review, we neither reweigh the evidence nor reassess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.*

Indiana Code section 31-35-1-8 required the juvenile court to advise Father, who was

6

proposing to voluntarily relinquish his parental rights, of his constitutional rights and other legal rights, and the consequences under section 12 of that same chapter. The relinquishment forms signed by Father followed the language of Indiana Code section 31-35-1-12, and Father does not argue that the juvenile court failed to present him with the required advice and the advisement of rights. Furthermore, Indiana Code section 31-35-1-6 requires that a parent be present in open court when voluntarily relinquishing his parental rights. Father appeared telephonically due to his incarceration and signed the relinquishment forms, which were notarized by his counsel. Father does not contest his presence at the hearing. Additionally, Indiana Code section 31-35-1-6(b) provides that if all of the prerequisites for the consent to relinquish parental rights have been met, the juvenile court may consider only the issue of the voluntariness of the consent.

Pursuant to Indiana Code section 31-35-1-10, if the juvenile court finds that the allegations contained in the petition are true, then "the court shall terminate the parent-child relationship." When the juvenile court terminates the parent-child relationship "all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, parenting time, or support pertaining to the relationship, are permanently terminated [,] and [the parent's] consent to the child's adoption is not required." Ind. Code § 31-35-1-12 (2)(A)&(B).

"The issue of an invalid consent may be raised by a petition to withdraw consent, and the burden of proof in such a matter falls on the petitioner." *Youngblood v. Jefferson Cnty. Div. of Family & Children*, 838 N.E.2d 1164, 1168 (Ind. Ct. App. 2005). Father does not

7

challenge that termination of his parental rights to the children was in their best interest or allege that DCS did not have a satisfactory plan for the care and treatment of A.M.K. and A.O.K. He claims that his consent should be set aside because he was mistakenly advised by his legal counsel about his options, i.e., his only option was to relinquish his parental rights, and mistakenly believed that Paternal Grandmother would be allowed to adopt the children.

We have held that a parent's ability to withdraw their consent to the relinquishment of their parental rights is extremely limited. *Id.* at 1169 (quoting *In re J.W.W.R.*, 712 N.E.2d 1081, 1085 (Ind. Ct. App. 1999), *trans. denied, abrogated on other grounds by Neal v. DeKalb Cnty. Div. of Family & Children*, 796 N.E.2d 280 (Ind. 2003)). Indiana Code section 31-35-1-7(c) sets forth that if there is any competent evidence of probative value that fraud or duress was present when the written consent was given or that the parent was incompetent, then the trial court shall dismiss the petition to terminate or continue the proceeding.

In support of his argument, Father points to his testimony that his understanding of what was occurring at the hearing to voluntarily terminate his parental rights was to further his efforts to have his children placed with Paternal Grandmother. He also testified that neither his counsel in the termination of parental rights cases, nor the juvenile court, told him that someone other than Paternal Grandmother could gain custody of or adopt A.M.K. and A.O.K. These arguments appear to be a request for this court to reweigh the evidence, a task we will not undertake on review. *In re C.S.*, 863 N.E.2d at 417.

The record reveals that, at the January 5, 2011 hearing, Father's counsel explained to the juvenile court that Father was prepared to voluntarily relinquish his parental rights in part

8

because of the trial court's ruling in the underlying CHINS matter, which accepted the plan terminating parental rights and proceeding to adoption of this children. The juvenile court had rejected Father's permanency plan calling for Paternal Grandmother to obtain custody of or adopt the children. Mother consented to the adoption of the children by the foster parents, and DCS proposed that as the permanency plan for the children. At the hearing on Father's motion to withdraw his consent, he stated that his counsel told him that Paternal Grandmother was no longer interested in gaining custody of the children and was packing to return home to Alabama. When Father was asked if anyone had explained to Father who would adopt or gain custody of the children, Father replied in the negative. In other words, Father was aware that the approved plan did not involve custody or adoption of the children by Paternal Grandmother, and that he understood that she was no longer interested in taking part in that plan. Accordingly, there is no competent evidence of probative value showing that Father was operating under a mistaken belief about what was being accomplished during the termination hearing.

We further observe that Father has cited to no authority for the proposition that either his counsel or the juvenile court was required or obligated to explain to him that someone other than Paternal Grandmother could adopt the children. This argument, therefore, is waived. *See Romine v. Gagle*, 782 N.E.2d 369, 386 (Ind. Ct. App. 2003); Ind. Appellate Rule 46(A)(8)(a). In sum, the juvenile court's finding and conclusion that Father's argument asserting mistaken belief and mistake of fact fail, is supported by the evidence. The juvenile court did not err.

9

In addition, the record reflects that the juvenile court's finding that Father failed to meet his burden of establishing fraud is supported by the evidence. A.M.K. and A.O.K. were placed with foster parents during the pendency of the matter. Prior to signing the relinquishment of rights forms, Father was aware that the juvenile court had approved DCS's proposed permanency plan for the children calling for termination of parental rights and adoption by the foster family. The juvenile court had rejected Father's proposed permanency plan. The trial court did not err.

Father argues that his consent should be withdrawn because he was under duress when he signed the forms. At the termination hearing, however, he testified that he met with his counsel the morning of the hearing, reviewed the forms, counsel went over the forms with him, he freely and voluntarily signed the forms, and he was capably represented by counsel for the proceedings. Later, during the hearing on his motion to withdraw consent, Father testified that he was under a great deal of stress. He claimed that he thought by signing the forms, he was signing his parental rights over to Paternal Grandmother. We will not reweigh the evidence. *In re C.S.*, 863 N.E.2d at 417.

We have held that "emotion, tensions, and pressure are . . . insufficient to void a consent unless they rise to the level of overcoming one's volition." Father has failed to establish that whatever stress he may have suffered at the time he signed the forms rose to the level of overcoming his volition. The trial court did not err. We therefore affirm the juvenile court's judgment. Affirmed.

VAIDIK, J., and PYLE, J., concur.

10