## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 01 2018, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cristin L. Just
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Termination of the Parent-Child Relationship of:

L.C. (Minor Child)

and

K.W.,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 1, 2018

Court of Appeals Case No. 18A-JT-859

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Judge

Trial Court Cause No. 37C01-1709-JT-206

**Tavitas, Judge.**

# Case Summary

K.W. ("Mother") appeals the termination of her parental rights to her child, L.C. We affirm.

# Issue

Mother raises one issue, which we restate as whether the evidence is sufficient to support the termination of her parental rights.

# Facts

L.C. was born on December 11, 2016, to Mother and J.C. ("Father").[1] At the time, Mother had another child removed from her care in White County due to Mother's mental health and substance abuse issues, and Mother was not compliant with the services offered by the White County Department of Child Services. Mother tested positive for opiates at the time of L.C.'s delivery, and L.C. exhibited withdrawal symptoms. L.C.'s meconium then tested positive for marijuana and opiates. The Jasper County Department of Child Services ("DCS") received a report regarding L.C. and removed L.C. from Mother's care.

---

[1] Father's parental rights were also terminated, but he does not participate in this appeal.

[4] On December 16, 2016, DCS filed a petition alleging that L.C. was a child in need of services ("CHINS") under Indiana Code Section 31-34-1-1 and Indiana Code Section 31-34-1-10. DCS alleged:

a. That on or about December 11, 2016, mother tested positive for opiates upon admission for a scheduled C-section.

b. That the child experienced signs of withdrawal symptoms including high pitch shrill cry and tremors.

c. That hospital personnel have been unable to fully asses[s] the infant due to mother refusing to allow the child to be taken into the nursery for any length of time and mother has been breastfeeding while taking opiate medication, therefore the infant is continuing to receive opiate medication through breast milk.

d. That mother refused to follow medical advice with regard to practicing safe sleep while in the hospital and slept with the child in her bed.

e. That mother admits to taking a Percocet and Morphine prior to going to the hospital for her C-section without a valid prescription.

f. That father admits he was aware that mother took Percocet and Morphine prior to going to the hospital and admits knowing that she did not have a prescription.

g. That mother has another child removed from her care in White County due to her mental health and substance

> abuse and she is currently non-compliant with the services through the White County case.

Ex. Vol. IV p. 22. Mother and Father admitted the allegations, and the trial court adjudicated L.C. a CHINS.

[5] The trial court entered a dispositional order, which ordered Mother, in part, to: (1) maintain suitable housing; (2) secure and maintain a legal and stable source of income; (3) avoid consumption of illegal controlled substances; (4) avoid consumption of alcohol; (5) obey the law; (6) complete a substance abuse assessment and follow all recommendations; (7) submit to random drug screens; and (8) attend all scheduled visitations with L.C.

[6] Mother made minimal progress in complying with the dispositional order. Mother repeatedly tested positive for illegal substances, including methamphetamine, marijuana, morphine, and heroin. Mother failed to maintain consistent contact with DCS, failed to verify employment, and failed to find stable, suitable housing. Mother did not complete her parenting education, and her attendance at supervised visitations with L.C. was inconsistent.

[7] On September 1, 2017, DCS filed a petition to terminate Mother's and Father's parental rights with respect to L.C. Subsequently, in October 2017, Mother was charged in Newton County with unlawful possession of a syringe, a Level 6 felony. At the time of the termination hearing in February 2018, Mother was still incarcerated. After the hearing, the trial court entered findings of fact and

conclusions of law terminating Mother's and Father's parental rights to L.C. Mother now appeals.

## Analysis

[8] Mother challenges the termination of her parental rights to L.C. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[9] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial

court entered findings of fact and conclusions of law in granting DCS's petition to terminate Mother's parental rights. When reviewing findings of fact and conclusions of law entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[10] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

## I. Changed Conditions

Mother challenges the trial court's finding that a reasonable probability exists that the conditions resulting in L.C.'s removal or the reasons for placement outside Mother's home will not be remedied.[2] In making this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court, however, must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

---

[2] Mother also argues the continuation of the parent-child relationship does not pose a threat to L.C.'s well-being. The trial court, however, did not make a finding that the continuation of the parent-child relationship poses a threat to L.C.'s well-being. Rather, the trial court found a reasonable probability that the conditions that resulted in L.C.'s removal and continued placement outside Mother's home would not be remedied, and accordingly, we only address that issue.

[12]     The trial court found:

There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied in that:

a.      That of the Forensic Fluids' drug screens completed mother failed nine of eighteen and father failed eighteen of twenty-six.

b.      That while mother did complete Intensive Outpatient Drug Treatment she failed to do any follow-up. Mother did not show up to ten scheduled individual therapy appointments and was ultimately discharged from that service in May of 2017.

* * * * *

d.      That mother and father were inconsistent with parenting education class. Parents would meet once or twice in a row and then have no contact with the service provider. Neither mother or father completed the parent education.

e.      That the caseworker for Family Focus assigned to mother and father last saw mother in August of 2017 and father in September of 2017 and tried weekly then biweekly to contact both parents through January of 2018 with no success.

f.      Mother participated in only 46 visitations out of the 81 offered while father participated in only 43 visitations out of the 81 offered. Mother was only fifty-seven percent compliant with visitation and father was only fifty-three percent compliant with visitation.

g.    That there was a concurrent White County DCS case with mother and during that time mother continually failed drug screens and had sporadic attendance with Wabash Valley for therapy and drug treatment. That White County DCS had to restart visitations through Help at Home due to the non-compliance of mother.

h.    That mother admitted to taking opiates during pregnancy and intensive in-patient drug treatment was recommended. Mother did complete in-patient drug treatment program but not until December of 2017 through her criminal case in Newton County, Indiana.

\* \* \* \* \*

j.    That of the 118 offered drug screens mother had twenty negative, twenty-four no shows, and seventy-four positive drug screens. Mother was less than twenty-five percent compliant or negative on drug screens.

\* \* \* \* \*

l.    That both parents have an instability problem. Mother is currently incarcerated and has no employment. Father has had no employment until the last three weeks and the home of parents as of August 10, 2017, was unfit with no walls just studs with insulation and no water.

\* \* \* \* \*

Appellant's App. Vol. II pp. 37-38.

[13]     Mother argues that DCS did not provide her with adequate means to maintain consistent contact and complete services. Mother contends that a "[l]ack of transportation and a phone" hampered her ability to access resources. Appellant's Br. p. 11. She also argues that she has made progress in addressing her substance abuse issues by participating in two treatment programs. Finally, she asserts that she was incarcerated because financial difficulties did not allow her to post bond and that her parental rights should not be terminated because of her indigency.

[14]     The reasons for L.C.'s removal from Mother's care and continued placement outside Mother's home were Mother's drug abuse and instability. Neither of these conditions have been remedied, and there is a reasonable probability that the conditions will not be remedied in the future.

[15]     Mother's substance abuse problems have not been resolved. L.C. was born with marijuana and opiates in her meconium and exhibited withdrawal symptoms. During these proceedings, Mother repeatedly tested positive for illegal substances, including methamphetamine, marijuana, morphine, and heroin. Mother tested positive on seventy-four drug screens, missed twenty-four screens, and tested negative on twenty. She completed intensive outpatient therapy in May 2017 but did not return for her individual therapy sessions. Mother has been incarcerated since October 2017 after her arrest for possession of a syringe. Although DCS had recommended inpatient treatment for Mother, she did not begin the treatment until November or December of 2017 as part of her criminal case.

[16] Mother's instability has similarly continued. During the CHINS proceedings, Mother was arrested for possession of a syringe. Mother also had a pending criminal case for "OWI, Possession of Marijuana, Reckless Driving, False Registration and Improper Passing" in Knox County, Indiana. Tr. Vol. I p. 60. At the time of the termination hearing, an active warrant for Mother's arrest existed. Prior to Mother's arrest for possession of a syringe, Mother secured housing; however, the housing was inappropriate for a child due to the exposed insulation and wiring and lack of running water. Mother never found employment. Mother's visits with L.C. were inconsistent, and Mother did not complete the court-ordered parenting education. Moreover, Mother's contact with DCS was inconsistent. When Mother did contact the case manager, Mother was "demanding and argumentative." *Id.* Mother typically ended phone calls with her case manager by "hanging up" on the case manager. *Id.*

[17] DCS tried to address Mother's "[s]ubstance abuse treatment, instability, employment, housing and coping skills." *Id.* at 53. The DCS case manager testified that there was no evidence to show that Mother's situation will change based on Mother's "noncompliance with services offered, the lack of stability, continued drug use, and the fact that [Mother] does not have her two older children in her care." *Id.* at 62. Although Mother blames her lack of transportation, lack of phone service, and indigency for her termination of parental rights, her arguments are merely a request to reweigh the evidence, which we cannot do. Mother's lack of progress in addressing her substance abuse and lack of stability are supported by clear and convincing evidence. The

trial court's finding that a reasonable probability exists that the conditions resulting in L.C.'s removal or the reasons for placement outside Mother's home will not be remedied is not clearly erroneous.

## II. Best Interests

[18] Mother also challenges the trial court's finding that termination of her parental rights is in L.C.'s best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at 267. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.*

[19] The trial court found:

> Termination is in the child's best interests . . . in that: That the case was initiated due to drug use and mother tested positive for opiates. . . . Mother completed services for Intensive Outpatient but did no follow-up and is currently incarcerated for a drug offense. That the baby's meconium tested positive for marijuana and opiates. There has been no progress made by either parent. That the child is placed in a foster family and that foster family is the only family she had known.

Appellant's App. Vol. II p. 38.

[20] Mother argues "the evidence, at best, shows that [she] may have tried, but simply did not try quite hard enough" and that "is not the standard and it does not support the drastic action of terminating parental rights . . . ." Appellant's Br. p. 12. Mother's argument is, again, a request that we reweigh the evidence, which we cannot do. DCS presented evidence that Mother made little to no

progress toward addressing her substance abuse issues or her lack of stability. The DCS case manager testified that termination of Mother's parental rights was in L.C.'s best interest because L.C. "needs a home that can provide structure and stability and a substance-free environment that her parents are unable to [provide]." Tr. Vol. I p. 63. L.C.'s foster family is "the only family she actually knows and she's been with them since birth." *Id.* The totality of the evidence supports the trial court's decision that termination of Mother's parental rights is in L.C.'s best interest. DCS proved by clear and convincing evidence that termination is in L.C.'s best interest. Accordingly, the trial court's finding on this issue is not clearly erroneous.[3]

### III. Satisfactory Plan

[21] Finally, Mother also challenges the trial court's finding that there is a satisfactory plan for the care and treatment of L.C. Indiana courts have held that for a plan to be "'satisfactory,'" for the purposes of the termination statute, it "'need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated.'" *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014) (quoting *Lang v. Starke Cnty. Office of Family and Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*.

---

[3] DCS argues that L.C. "had been removed and placed outside Mother's home since December 14, 2016, which was a little over two years from the February 28, 2018 termination factfinding." Appellee's Br. p. 21. We note that L.C. was removed from Mother's care for a little over one year, not two years.

[22] The trial court found: "The Department of Child Services had a satisfactory plan for the care and treatment of the child, which is: adoption." Appellant's App. Vol. II pp. 38-39. Mother does not dispute that the potential adoptive home is suitable for L.C.; rather, she argues that "removal from a parent's custody and care should take place only when the environment with the natural parent is 'wholly inadequate for their very survival.'" Appellant's Br. p. 12 (quoting *In re Matter of Miedl*, 425 N.E.2d 137, 141 (Ind. 1981)). This argument is more properly directed to other factors, such as whether termination of parental rights is in L.C.'s best interest. Moreover, our supreme court has held: "'Clear and convincing evidence need not reveal that the continued custody of the parent [ ] is wholly inadequate for the child's very survival.'" *V.A.*, 51 N.E.3d at 1145-46 (quoting *Bester*, 839 N.E.2d at 148). Mother's argument that we should consider whether her custody of L.C. would be wholly inadequate for L.C.'s very survival is misplaced given our supreme court's rejection of that standard.

[23] DCS is only required to offer a general sense of the plan for L.C. after termination of Mother's parental rights. The DCS family case manager testified that the plan for L.C. was adoption and that a prospective home had been identified; adoption is a satisfactory plan. *See, e.g., Lang*, 861 N.E.2d at 375 (holding that adoption and independent living were satisfactory plans). The trial court's finding that DCS had a satisfactory plan is not clearly erroneous.

# Conclusion

[24] The evidence is sufficient to support the termination of Mother's parental rights to L.C. We affirm.

[25] Affirmed.

Brown, J., and Altice, J., concur.